Pamela Sue Rulo SADOWSKI,
Plaintiff-Appellee,

v.

BOMBARDIER LIMITED,
Defendant-Appellant.

No. 75–1980.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1976.

Decided July 22, 1976.

John J. Albert, Racine, Wis., for defendant-appellant.

James R. Gass, Milwaukee, Wis., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and PERRY, Senior District Judge.*

PELL, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff-appellee Pamela Sadowski in the amount of $100,000 in an action to recover for personal injuries allegedly sustained as the result of the improper design and manufacture of an Olympic 399 Ski-Doo snowmobile manufactured by defendant-appellant Bombardier, which judgment was entered on May 15, 1975. By order of August 13, 1975, the district court denied Bombardier's Fed.R.Civ.P. 59(a) motion for a new trial and also denied Bombardier's Fed.R.Civ.P. 60 motion for relief from the judgment and for remittitur of the damage award. In *Sadowski v. Bombardier Limited,* 527 F.2d 1132 (7th Cir. 1975), (*Sadowski I*) this court held that the appellant had filed a timely motion for a new trial pursuant to Fed.R.Civ.P. 59(b), tolling the running of time for filing a notice of appeal from the original judgment, and denied the plaintiff-appellee's motion to dismiss the appeal.

This appeal raises several issues regarding an asserted abuse of discretion by the trial court in not utilizing the provisions of Fed.R.Civ.P. 60(b) to relieve Bombardier from the operation of the final judgment. The appeal also raises the issue of trial

* The Honorable J. Sam Perry, Senior District Judge of the Northern District of Illinois, is sitting by designation.

court error in failing to grant a new trial pursuant to Fed.R.Civ.P. 59 because of the court's refusal to present to the jury special verdict forms and an instruction òn contributory negligence.

## I. The Relevant Pretrial Proceedings

This diversity action was commenced on October 24, 1972. Over two years later, on January 15, 1975, the court formally entered a pretrial order which incorporated the stipulations and orders made at a pretrial conference held on January 10, 1975. The pretrial order provided that all notifications of expert witnesses were to be in compliance with Fed.R.Civ.P. 26, that plaintiff would finalize the medical damage claim by furnishing to the defendant all the medical reports, that the defendant would have the plaintiff examined by its own doctor by April 1, 1975, or waive its right to do so, and that, except as set forth in the order, no additional discovery in the case would be permitted after March 15, 1975. The parties were to meet not later than the week of April 1, 1975, to prepare the report called for in the standard pretrial order of the court, the plaintiff having the principal burden for the composition of such report, which was to be filed with the court by April 10, 1975, and, if not filed, it was understood that the action would be dismissed for want of prosecution.

The record discloses that the terms of the pretrial order were not followed with exactitude. For instance, the report was not filed until April 15, 1975, some five days later than the date specified in the pretrial order. The parties apparently never met for the purpose of preparing the pretrial report, but they did conduct a pretrial conference on April 29, 1975. This conference occurred almost exactly two weeks after the further pretrial conference date specified in the January 15, 1975, order.

Even though no paragraph of the pretrial order authorized discovery after the cutoff date, the deposition of Dr. George Thuerer was taken on April 30, 1975, apparently by agreement of counsel. The joint participation of the attorneys in discovery not formally authorized by the court order represents but one instance of the considerable disregard for the exact language of the pretrial order. Despite an apparent mutuality of nonobservance of the pretrial time scheduling,[1] the defendant claims error requiring reversal arising from the plaintiff's late delivery of the expert medical reports and her asserted failure to provide the names and addresses of expert witnesses and to state the substance of the facts and opinions to which the purported experts were expected to testify.

The record discloses that the plaintiff-appellee presented the March 1, 1974, report of Dr. William Frackleton to the defendant-appellant on April 15, 1975. Dr. Frackleton's later medical report of February 10, 1975, was furnished to Bombardier's counsel on April 28, 1975, just six days before commencement of the trial. The February 27, 1973, medical report of Dr. George Thuerer was presented to the defendant on April 29, 1975, five days before trial and one day before the tardy deposition of the surgeon.

The pretrial order of January 15th not only required the exchange of the names and addresses of each party's prospective expert witnesses, together with a stipulated narrative statement of each expert's background and experience, but incorporated the requirement of Fed.R.Civ.P. 26 regarding the notifications of expert witnesses. The plaintiff's pretrial report of April 15, 1975, listed only Doctor Stanley Weiss, a metallurgist, and Doctors Thuerer and Frackleton, surgeons, as expert witnesses. The report did list as witnesses two individuals by the names of Fred Gates and Ed

---

1. The plaintiff points out that the defendant did not furnish its list of witnesses until April 29, 1975, which was after the time specified and only six days before trial. The defendant responds that its list only contained three witnesses, that the plaintiff was already aware of two of these and the general content of their proposed testimony and that the violation of the deadline as to the third witness was harmless and technical. Nevertheless, it appears that while the record does not indicate bad faith on the part of either litigant it also does not indicate that either was overawed with the necessity for meeting the time schedules.

Kwaterski, but these prospective witnesses were not identified as experts. The standard pretrial order of the court, a copy of which was attached to the twenty-paragraph special order of January 15, 1975, stated that the court contemplated that other witnesses would not ordinarily be permitted to be called except upon a showing of surprise.

## II. Entitlement to Rule 60(b) Relief

### A. The Expert Medical Opinion Testimony

Appellant Bombardier contends that the systematic violation of the pretrial order on the part of the plaintiff-appellee prevented a fair trial. Bombardier argues that it is entitled to Rule 60(b) relief because it was surprised and excusably unprepared to refute the medical testimony presented by appellee Sadowski at trial. The appellant contends that the plaintiff-appellee gained unfair advantage in the presentation of her medical testimony contrary to the intendment of Fed.R.Civ.P. 16.

The gravamen of Bombardier's charge is that it was never given any valid warning that Dr. William Frackleton would opine that there existed a 20.25% permanent total disability. Had it timely received such a warning, Bombardier insists, it would certainly have arranged for an independent medical examination of the plaintiff. The appellant claims that it was first warned that Dr. Frackleton would testify that the plaintiff sustained a "severe residual functional defect" to her forearm only upon receipt of his final report.

Our review of the record confirms that plaintiff's counsel made effective use of Dr. Frackleton's trial testimony regarding the 20.25% total disability. However, Bombardier's contention that it was not aware that there was a severe functional disability associated with plaintiff's arm injury and index finger amputation is not similarly supported. The earliest medical report of Dr. George Thuerer was dated January 28, 1972, and the appellant had obtained that medical report during discovery. Dr. Thuerer states, although in non-mathematical terms, that "this patient has had a very severe injury to her right forearm and there will be considerable permanent disability." '

The final report prepared by Dr. Frackleton shortly before trial does not contain any "surprise" information. Its conclusion that the plaintiff had sustained a severe residual function defect is wholly consistent with the earlier January 28, 1972, report of Dr. Thuerer. While Dr. Thuerer's February 27, 1973, report and Dr. Frackleton's February 10, 1975, report contain more detail, they cannot be fairly read as embodying surprising medical conclusions.

■ Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate or where error or miscalculation is traceable really to a lack of care. See 7 Moore, Federal Practice ¶ 60.22[2], at 254–56 (2d ed. 1975). While the plaintiff did not furnish the final report of Dr. Frackleton until April 28, 1975, long after the time for delivery specified in the pretrial order, her inability to obtain and forward the report was before the trial court when it considered appellant's Rule 60(b) motion below. The plaintiff's attorneys had made numerous calls to Dr. Frackleton's office asking for a copy of the February report, and the plaintiff's attorneys forwarded the report to defense counsel at the latest one day after receiving it themselves.

■ Moreover, Bombardier never objected at trial to the testimony of Dr. Frackleton. On the basis of the appellant's failure to comply with Fed.R.Civ.P. 46 alone, the trial court acted well within its discretion in denying the defendant's posttrial Rule 60(b) motion. In the absence of plainly prejudicial error, which we do not find here, a party may not sit silently by, letting claimed error occur and then seek relief if the result is unfavorable. 9 Wright & Miller, Federal Practice and Procedure § 2472, at 455 (1971). Our examination of the record discloses that there was no objection at the time of Dr. Frackleton's testimony that the defendant was in any way

surprised by the severity of the injury or had been denied the opportunity to learn of its severity. Also, we note that in response to a direct inquiry of Bombardier's counsel the doctor testified that the schedule of disability calculations was available not only to physicians but to anyone in Wisconsin or elsewhere.

### B. Surprise Liability Testimony by Undisclosed Experts

Bombardier recognizes that a trial court's ruling on Rule 60(b) motions regarding surprise testimony and the noncompliance with the pretrial order will not be disturbed except upon a showing of an abuse of discretion. It urges, however, this court to follow *Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999, 1003 (7th Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972), which recognized that judgments which are vehicles of injustice should not be left to stand. The appellant urges that the surprise testimony of plaintiff-appellee's witnesses Kwaterski and Gates on the cause-effect relationship of a breaking main leaf on the operation of a snowmobile violates the pretrial order and renders the judgment in favor of the plaintiff a "vehicle of injustice."

The issue here first came into focus when Kwaterski, who was engaged in the business of selling and repairing snowmobiles, took the stand. Defense counsel objected to the question of whether Kwaterski had had occasion to see broken main leaf springs on Ski-Doo snowmobiles, stating that he had never met the witness before and that he didn't know what he was going to say. Initially, the court overruled the objection when he was informed that Kwaterski had been listed as a witness. The court thereupon observed that the defense could have deposed the proposed witness.

When it was brought to the attention of the court that the pretrial report was filed subsequent to the cutoff date for discovery, the district court, obviously recognizing the problem, excused the jury to pursue the purpose of the testimony. The plaintiff indicated Kwaterski would testify that during the years in question Ski-Doos had been brought to his place of business with broken main leaf springs and that officials and representatives of the defendant were aware of the breakage problem. Counsel also pointed out to the court that the name had been disclosed on the witness list and therefore would have been available to the defense for the purpose of having his statement taken as defense counsel apparently had with other persons.[2] The district court, however, sustained the objection, pointing out that there had not been compliance with the cutoff date. An offer to prove then followed, the gist of which was that Kwaterski would testify that he had had experience with broken main leaf springs on Ski-Doos during the years in question and that from his own personal knowledge and experience if a main leaf spring broke there would be a loss of control over the vehicle since the ski would no longer have any steering ability. As counsel then started to put Gates, the other witness belatedly disclosed, on the stand, it was brought to the attention of the trial judge that the defense witness list had also been tardily furnished. Whereupon, the court observed:

> Well, I think in the interest of justice, I will allow the previous witness to testify and I will allow Mr. Gates. We'll see where we go from here.

After further extended colloquy out of the presence of the jury and the court continuing to indicate that the witnesses would be permitted to testify, the defendant stipulated that the spring was defective but did not stipulate that the defective spring

---

**2.** We would also point out upon the belated receipt of a witness list containing a name unknown to counsel, the attorney is not precluded from filing an appropriate motion with the court setting forth the facts and asking for an order permitting a discovery deposition to be taken notwithstanding the passage of the date foreclosing further discovery. Recognizing the pressures on district court judges to adhere to their trial schedules, we cannot say that such a motion would have been granted. It would have, however, put the matter in better perspective than at trial. Instead, the defense did nothing but waited until the middle of the trial and then endeavored to exclude the testimony altogether.

caused the accident nor that it had notice of the defect.

During the subsequent testimony of the two witnesses, they were examined with regard to what happened after their observation of broken springs. The defendant objected that such questions called for an expert opinion, that the witnesses were not established as experts, and that, if experts, they had not been listed as such in the plaintiff's pretrial report. The court agreed they had not been so listed but observed that the testimony was not being given as expert testimony. On appeal, the primary thrust of the present contention by Bombardier is that the testimony was clearly expert testimony.

It appears to us that the question of the expertness or nonexpertness of witnesses Gates and Kwaterski must be viewed in light of the precise nature of the testimony elicited by the plaintiff and the nature of the issue to which they spoke. It was the plaintiff's position that the defective left main leaf spring broke during normal operation of the Ski-Doo snowmobile and that thereafter an immediate flipping of the machine took place. Bombardier took the position throughout the trial that any loss of control must have occurred before the leaf spring broke and that the leaf spring breakage did not cause any loss of control or the accident. It was this issue of a possible reason for any loss of control to which the direct examination of Mr. Kwaterski and a part of the examination of Mr. Gates related.

On direct examination, Kwaterski stated that he had seen ten Ski-Doos in operation with broken leaf springs and that he had ridden as many as ten such machines. He stated it was next to impossible to control the machine over a speed of five miles per hour if the spring was broken. He stated that the ski on such a machine "acts like a fish." Mr. Gates, a semi-retired snowmobile dealer, testified primarily about notice to Bombardier of the defective condition of

the leaf spring assemblies, but he did testify briefly on direct examination that he had observed a loss of control from the breaking of main leaf springs.[3]

■ The witnesses were not asked, in terms, to conclude "what happens when a spring breaks." This was something left for the jury to decide. They were only asked to relate what they had seen happen to the snowmobiles they had seen and ridden with broken leaf springs. Neither witness was asked on direct examination to go beyond the relating of what had happened to them when using such snowmobiles. The fact that upon cross-examination, questions were put to the witnesses by Bombardier which could be construed as calling for them to opine as experts does not control whether their testimony on behalf of the party calling them was that of experts.

We recognize that the plaintiff's counsel were skating very close to the line dividing expert from lay testimony, and we think that total candor might have required them to indicate that Kwaterski and Gates did have some expert ability. However, the two witnesses were listed in the pretrial report. Nor does the record support a conclusion that there was a knowing concealment such as is prohibited by Fed.R.Civ.P. 26(e). The testimony offered by Kwaterski and Gates assumed new significance after the stipulation regarding the defective condition of the spring, but the plaintiff could not have foreseen exactly how midtrial developments might interact with her witness list.

■ Trial judges must be permitted wide latitude in guiding cases through preparatory stages, and their decisions as to the extent that pretrial activity should prevent introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that they have clearly abused the broad discretion vested in them by Rule 16. See *Davis v. Duplantis*, 448 F.2d 918 (5th Cir. 1971).

---

3. We have not addressed ourselves to the question of the admissibility of the particular testimony and express no opinion thereon. The question here is whether Kwaterski and Gates should have been allowed to testify at all because of noncompliance with the pretrial order.

The determination as to whether or not parties should be held to pretrial orders is a matter for the discretion of district court judges. *De Laval Turbine, Inc. v. West India Industries, Inc.*, 502 F.2d 259, 263 (3d Cir. 1974).

■ In the instant case, the trial judge determined that the testimony as to what had happened after main spring breakage insofar as control of an Olympic 399 machine was concerned was competent and relevant. The questioning took place only after the district judge had confronted and rejected the appellant's argument regarding the alleged noncompliance with the pretrial order. But even if Gates and Kwaterski were to be regarded as undisclosed expert witnesses, and we are not persuaded that the district court was incorrect in not so regarding them, this court would not interfere with the trial court's determination not to hold the appellee to the pretrial order unless there was a clear abuse of discretion or manifest injustice.

Rule 16 itself indicates that pretrial conferences are held in order to produce agreement among the parties and the trial judge as to the scope of the issues in the particular case and the admission of uncontested items of evidence. The order which follows such conferences is intended to be tailored to the particular case and to reflect agreements made by the parties. *Peter Eckrich and Sons, Inc. v. Selected Meat Co.*, 512 F.2d 1158, 1164 (7th Cir. 1975). Although proper implementation of the rule requires that pretrial orders should not become mere boilerplate, Rule 16 itself contemplates that the pretrial order may be modified at the trial to prevent manifest injustice.

In view of all of the circumstances, it is our holding that the district court did not abuse its discretion in permitting the testimony of Kwaterski and Gates to be presented to the jury.

### C. Allegedly Unfounded Attack on Defense Counsel

■ Bombardier also sought relief under Rule 60(b) because of a challenge made in open court by opposing counsel and because the sequel to that challenge resulted in an allegedly inadequate curative instruction. At issue was the unavailability of the snowmobile in question for the manufacturer's inspection.[4] The trial court concluded that while the entire incident had been regrettable, the curative instruction it had given was sufficient to obviate any prejudice to which the defendant might have been subjected.

We hold that the trial court did not abuse its discretion in denying Bombardier's Rule 60(b) motion based on the allegedly improper statements of plaintiff's counsel. This exchange occupied only a few moments in a four day jury trial. A claim of reversible error based on such a momentary incident is inappropriate under the factual circumstances of this case. We have no reason for differing from the trial court's conclusion that its curative instruction[5] adequately handled the matter.

4. What was involved here was the fact that the main body of the snowmobile was not preserved until the time of the trial. It appears that those parts deemed significant to the law suit, being the springs and skis, were the subject of inspection and testimonial attention.

5. The curative instruction reads:
   As I pointed out at the beginning of the trial, it is the Court's function to apply the law. It is the lawyer's function to represent their clients to the best of their ability. And we have had very able lawyers in this case, and while I am talking about the fine members of the American Bar here, I have to point out that I believe it was yesterday that Attorney John Albert mentioned that the defendant had been denied the opportunity to examine the entire snowmobile, to which statement Mr. Kasdorf strenuously objected. Outside of your presence, I have examined the matter, looked into it, and it appears that at the commencement of the proceedings, that is when the plaintiff notified the defendant of a claim, the defendant—defendant's agent at that time did indicate an interest in seeing the entire machine. And they had some correspondence back and forth, but in any event, when they got around to it, it turned out that the entire machine—the machine as a whole had been traded in on a new snowmobile machine. And it was for that reason that the whole machine was not presented to the defendant.

### III. The Refusal of Special Verdict Forms

Both parties submitted special verdict forms. The trial court refused to submit these. Bombardier's special verdict forms pertained to the matter of contributory and comparative negligence. This court has frequently ruled that the submission of a special verdict or interrogatories to accompany a general verdict is governed by Fed.R.Civ.P. 49 and not by the law of the state. *E. g., Tillman v. Great American Indemnity Co., of New York,* 207 F.2d 588, 593 (7th Cir. 1953). The district court has considerable discretion as to the nature and scope of the issues to be submitted to the jury in the form of special verdict questions. *Perzinski v. Chevron Chemical Co.,* 503 F.2d 654, 660 (7th Cir. 1974).

We hold that the trial court did not abuse its discretion in refusing to submit the special verdict forms to the jury and in choosing instead to submit the case on a general verdict form. *Cf. Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1100 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

### IV. The Refusal of a Contributory Negligence Instruction

When Bombardier moved the trial court for a new trial, it argued that there had been errors of law in instructing the jury and in refusing to submit the question of plaintiff's negligence for the jury to answer. The trial court entertained the view that Bombardier's Rule 59 motion was untimely. As previously noted, this court disagreed as to the timeliness. *Sadowski I, supra.* As to the Rule 60(b) motion, the district court ruled that under *Swam v. United States,* 327 F.2d 431 (7th Cir. 1964), *cert. denied,* 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55, claimed errors of law were not sufficient grounds for Rule 60(b) relief, since that rule was not a substitute for a timely appeal or a motion for a new trial. Our rejection of the trial court's ruling regarding the timeliness of appeal from the judgment requires this court to examine the matter of the instructions claim of error.

As a first step in that examination we turn to the language of Rule 51, Fed.R. Civ.P.:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of hearing of the jury.

The defendant submitted its written request for instructions in the form of a letter which referred to certain numbered instructions appearing in Wisconsin Civil Jury Instructions. The text of the instructions so tendered is not found in the record; however, the text of the instruction upon which the defendant relies in this appeal, 3254 Duty of Buyer or Consumer, is set forth in the motion for new trial:

The buyer (consumer) has a duty to use ordinary care for his own safety and protection, and, to that end, to observe all obvious and patent defects and dangerous conditions, if any, which are open and obvious to him if he is using reasonable care and caution for his own safety and protection. The danger, however, must not only be obvious, but must be understood by the buyer (consumer). The fail-

---

I am satisfied that all the parties were acting in good faith. I am satisfied that the plaintiff's lawyer acted in good faith when he said that in due time he'd furnish the machine, and I am satisfied the plaintiff herself was not aware of any obligation not to trade the machine in, and she did. It is one of the things that happened in life. So I want you to know that is the story of the machine and why it wasn't presented.

ure to use a product in accordance with the instructions which are adequate, if you find they were adequate, or the use of such product in an abnormal manner is negligence.

You are further instructed that a person is not bound absolutely by law to see every defect or dangerous condition, or even to remember the existence of every defect or dangerous condition of which he had knowledge. He is only required to act as a reasonably prudent person under the same or similar circumstances would act.

You are further instructed that a person is not required to anticipate negligent acts or omissions on the part of the others, and is not guilty of contributory negligence in failing to suspect any such danger.

The record does not reflect any failure on the part of the district court to inform counsel in advance of argument of the instructions it would give. We infer from references in the transcript of the evidence that this occurred at the noon recess, was held in chambers, and was not taken by a court reporter.[6] We encounter greater difficulties in considering the present contention, however, when we view the record pertaining to the Rule 51 requirement that for the assignment of error the grounds of objection must be stated distinctly as to the failure to give any instruction. Upon this appeal, the defendant takes several tacks at convincing us that contributory negligence was very much an issue and therefore should properly have been instructed upon as requested.

We are not unmindful of cases in this circuit displaying leniency in adhering to the quite plain language of Rule 51. Thus, in *American National Bank and Trust Company v. Aetna Insurance Company*, 447 F.2d 680, 683 (7th Cir. 1971), there apparently had been a lack of record statement of objections in the trial court. This court nevertheless considered the objections advanced upon appeal because the trial judge had repeatedly said that the objections had been noted for the purpose of protecting the record and that the record was protected, "discouraging detailed objections by plaintiff." In *Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1047 (7th Cir. 1974), this court, notwithstanding the absence of objections of record following the giving of the instructions, chose to review the objections argued at the appellate level because "all of them were specifically pointed out to the trial court in connection with pre-instructions discussions, or inextricably relate to the objections so pointed out and carried over by reference, with the approval of the trial court, into the post-instruction time frame." *Hetzel v. Jewel Companies*, 457 F.2d 527 (7th Cir. 1972), indicates that a party will be relieved of the waiver of error aspect of Rule 51 when the trial court fails to comply with the intent of the rule that counsel be afforded the opportunity at the proper time to state to the court objections outside the hearing of the jury.[7]

In the case before us we find ourselves not in a position to extend the apparent

---

**6.** Just before the noon recess, the court informed the jury that "the only thing we have to do, we, the lawyers and the judge, is to spend a little time on instructions . . . ." Subsequent to the arguments when the court asked the attorneys if they had exceptions [objections] to the instructions, counsel for the defendant at one point referred to his statement "off the record this morning," and the court, although not supported in the record, observed that the "record will reflect you made that argument in chambers and I considered it."

**7.** We, of course, in our deliberations are bound by the law of this circuit. We also are aware that a trial judge is in a position to impose considerable, and effective, pressure upon counsel for compliance with his directions for procedure. The existence of such pressure is not lessened in an overburdened federal trial judiciary which is engaged in a constant struggle to keep calendars to a timely schedule. Despite these factors, we think counsel would be well advised to heed the admonition of another circuit:

> We think he was under the duty to object and, even at the risk of incurring the displeasure of the trial court, to insist upon his objection. Having failed to do so, it is too late to urge this as error here.

*Phillips v. Kitt*, 110 U.S.App.D.C. 186, 290 F.2d 377, 378 (1961).

leniency of this circuit to the appellant. We search in vain for any indication that the district court was made aware of the contentions *now* advanced for the necessity of the giving of the particular instruction. The record does not disclose the reasons given for the district court's declination, and it may well have been that the court was of the opinion that the matter was adequately covered elsewhere.[8] The instruction 3254 dealing with the duty of the buyer would have presented only a partial picture to the jury and should have been supplemented with the aspect of the legal effect of contributory negligence in Wisconsin if the defendant was pursuing with any strength of belief this particular defense. In this court, the defendant argues aspects flowing from the alteration of the product but there was no attention given in proposed instructions to the imputation aspects of negligence which would have been involved in view of the fact that the plaintiff's then husband was maintaining the snowmobile. In this court, the defendant quotes a part of Wisconsin Civil Jury Instruction 3268 pertaining to the contributory negligence of a user of a product knowing it had been altered or knowing it was worn out in such a manner as to render the same unsafe. No such instruction was asked to be given by the trial court.

We do not consider this a case in which the district court precluded the attorney from stating his objection fully on the record. It is true that at the post-charge session out of the hearing of the jury when counsel adverted to spreading briefly on the record the objection to the non-giving of 3254 in view of the lateness of the hour, the court told him that he need not elaborate on it, that his argument had been made and considered in chambers. Unfortunately, we have no clue as to the scope of that objection. There is no basis for our concluding that "it is clear that the court understood the specific ground being relied on." 9 Wright & Miller, Federal Practice and Procedure § 2554, at 650 (1971). Counsel for the defense at the past-charge conference did elaborate without curtailment by the court on three other instruction matters to make it clear to the court what the claimed error was.

We are not saying that egregious errors in the matter of instructions will never be the subject of appellate consideration when there is an insufficient record in the trial court. We do not consider the present case as one requiring such attention and hold that in the case before us error was not properly assigned in this court for the failure to give instruction 3254.[9]

## V.  Refusal of Remittitur

■ The only remaining question is whether the trial court should have required a remittitur of the damage award, reducing the judgment to a $50,000 award.

Upon the basis of the evidence in this case considered in the light of present day verdict ranges held to be not excessive, we

---

**8.** In addition to giving an instruction which advised the jury that when a buyer of a product knows or in the exercise of ordinary care should have known that the product was defective and in spite of such knowledge proceeds to use the product, and as a result thereof sustains injury, there is no breach of warranty, the court also gave the following instruction:

Now, we'll talk about negligence. A person is negligent when he fails to exercise ordinary care. Now what is ordinary care? Ordinary care is the degree of care which the great mass of men kind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelli-

gence and prudence ought reasonably to foresee that such an act or omission will subject the person or property of another or himself, as a matter of fact, to an unreasonable risk of injury or damage. Negligence may also be said to mean a want of or failure to exercise that care or caution which a person of ordinary intelligence and prudence usually exercises in a like or similar situation, work or operation under like or similar circumstances.

**9.** Because of the disposition which we have reached on this issue, we do not need to reach the persuasive argument of the plaintiff that quite simply there was a failure of any evidence to support the giving of contributory negligence instructions.

are unable to say that the district court should have ordered a remittitur.

For the reasons set forth in the above opinion, the judgment of the district court and the district court's order in the Rule 60(b) motion are

AFFIRMED.