Howard SIH, individually and as Special Administrator of the Estate of Bei Qing Sun, deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 03–2427.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 2004.

Decided Feb. 2, 2004.

James T. Newman, Cooney & Conway, Chicago, IL, for Plaintiff–Appellant.

Thomas P. Walsh, Ann L. Wallace, Office of the United States Attorney, Chicago, IL, for Defendant–Appellee.

Before FLAUM, POSNER, and RIPPLE, Circuit Judges.

## ORDER

After a motor vehicle accident in which he suffered serious injuries and which resulted in the death of his wife, Howard Sih filed a six-count complaint against the United States and its employee, Raymond Jennett. Mr. Jennett was dismissed from the action, leaving three remaining counts against the United States under the Federal Tort Claims Act: negligence, wrongful death and a survival action. After a two-day bench trial, the district court entered judgment in favor or the United States. Mr. Sih timely appealed to this court. For the reasons set forth in this order, we affirm the judgment of the district court.

## I

## BACKGROUND

### A.

On July 21, 2000, Mr. Sih was driving westbound on Illinois Route 22. At one point it intersects with Route 83, a public highway that runs north and south. While

Mr. Sih was traveling westbound on Route 22, Raymond Jennett, an employee of the United States acting within the scope of his duties, was traveling eastbound on Route 22. Between 9:00 p.m. and 9:30 p.m. the two vehicles collided in the intersection of Route 22 and Route 83. Mr. Sih had attempted to make a left-hand turn onto Route 83 in the southbound direction. Jennett's vehicle collided with Mr. Sih's vehicle after the latter crossed into the eastbound lane to make the southerly turn. As a result of the collision Mr. Sih suffered injuries and his pregnant wife was fatally injured.

Although Mr. Sih presented several theories to support negligence at trial, he only argues on appeal that Jennett's headlights were off at the time of the accident. To support this theory, Mr. Sih presented at trial evidence from several witnesses at the scene. Both parties agree that the intersection of Route 22 and Route 83 has a traffic light but is not otherwise lit. At the intersection, the road has four lanes with an additional left turn lane and accompanying left turn signal. Route 22 has a 45 m.p.h. speed limit.

Deputy Darryl Lewallen was the officer who investigated the accident and who interviewed the eyewitnesses. Other than the parties involved, there were four eyewitnesses who gave statements on the night of the accident. Two additional witnesses came forward several weeks later. Ryan Mitsch and Karen Hackl, passengers in the same car, were located in the left southbound lane of Route 83 waiting to cross the intersection of Route 22 to continue south. Aaron Wahl was in the right lane of southbound Route 83, but was waiting behind several other stopped cars for the light to turn green. William McAllister was on the other (south) side of the intersection, facing northbound on Route 83. The two witnesses not initially interviewed but who came forward weeks later were Jeremy Cepa and his passenger David Jossund. Cepa and Jossund testified that they were traveling eastbound on Route 22 behind the Buick driven by Jennett, the vehicle that struck Mr. Sih and his wife.

Mitsch testified that the accident occurred in front of him and that the Buick going eastbound did not have its lights illumined, nor did it sound a horn or use a warning signal. Mitsch's passenger, Hackl, also testified that the Buick did not have on its headlights and that she only saw the Buick when it was in the intersection and illumined by other vehicles' headlights. Wahl testified that a "black blob" entered the intersection. App. at 102; R.22–1 at 58.

Several witnesses testified that there was no other car following Jennett's Buick on eastbound Route 22. Jennett himself testified that, for five miles on Route 22, he had not seen any car behind his. However, contrary to this testimony, Cepa and Jossund testified that they were following the eastbound Buick. Cepa testified that he had been following Jennett's eastbound Buick for close to five miles with a three second separation between the cars while traveling just over the 45 m.p.h. speed limit. Cepa testified that the Buick had lights on because otherwise they would not be able to see the car because of the dark roads.[1] Cepa stated that, after the accident he slowed down to stop near or in the intersection. He gave his phone to his passenger to call 911. After calling 911, he did not give a statement until he returned from vacation several weeks later. Cepa testified that, while he was on vacation, his mother had read the accident report in the paper, and he determined

---

1. Cepa also testified that every once in a while he has tried to drive the road with his lights off, but concluded that "we have never been able to do it ever." R.22–2 at 184.

that "it was all wrong." R.22–2 at 185. Cepa's passenger, Jossund, also gave the police a report several weeks later. He also testified at trial that he had noticed that the eastbound Buick's taillights were on. He did not testify specifically that the Buick's headlights were on.

Jennett testified that he was driving the speed limit, although he first had told the investigating officers he had been traveling five miles over the limit. Further, Jennett initially reported to police that he did not recall whether he had his headlights on, but he testified at trial that he did in fact have his lights on. Mr. Sih testified that he did not see a vehicle when he attempted to make his turn but only saw darkness.

Finally, Mr. Sih attempted to elicit testimony from Deputy Lewallen, who arrived after the accident, as to whether the Buick's lights were on at the time of the accident. The Government objected, and the court sustained the objection. After questioning counsel about the substance of the Deputy's expected testimony, the court determined that it would not allow Deputy Lewallen to testify as an expert.

## B.

The district court entered judgment for the Government. The court first determined that Jennett's trial testimony was persuasive. In the district court's estimation, Jennett's early statement to police regarding his speed in excess of the legal limit—as well as the similar testimony of other witnesses—spoke to a time prior to the accident and did not inform the court about Jennett's speed at the time of the accident. The court then determined from jennett's trial testimony that he was traveling at about 45 miles per hour immediately before the collision and that his speed was reasonable. The court further concluded that the evidence indicated that, even if Jennett had been traveling slower, the accident still would have occurred.

Accordingly, determined the court, excessive speed was not the cause of the accident.

The court next considered whether the Buick's lights were on or whether the failure to use headlights was negligence. The court specifically addressed the credibility of witnesses Cepa and Jossund. Cepa and Jossund both had testified that they were traveling eastbound in a vehicle behind the defendant. The court noted that none of the other witnesses had noticed this vehicle and several witnesses had testified that there was no vehicle following the defendant. Despite this conflicting testimony, the court found the accounts of Cepa and Jossund credible. These witnesses testified that they were coming home from a movie and traveled behind the eastbound Buick for several miles. When Cepa and Jossund observed the accident, they called police and then immediately left the scene because Cepa's father, a firefighter, had instructed Cepa that, in accident situations, he ought to make sure that the occupants were getting help and then leave the area so as not to be in the way of arriving medical professionals. The court found this explanation likely, and noted that Mr. Sih did not suggest any reason why two witnesses would come forth and testify they were at the scene when they were actually not there. The court found no reason for such fabrication, and discounted the other witnesses' testimony because they had not noticed the Buick until impact, a point at which their attention was drawn to the accident rather than to any following car.

Specifically addressing whether the headlights were on, the court noted that Cepa and Jossund had testified that Jennett's lights were on. The court found persuasive testimony from Cepa and Jossund, youths around 18 years of age, that, in the past, they had attempted to drive with their headlights off on Route 22.

Both testified that it would have been impossible to drive a vehicle through the turns of that rural road without headlights. The court discounted the testimony from other witnesses that Jennett's lights were off by noting that the attention of those witnesses was not drawn to the car until the moment of collision. Cepa and Jossund had longer to observe the Buick than the other witnesses because they were traveling behind it for several miles. Therefore, the court determined that Jennett's headlights were on.

Finally, the court found that Jennett had not run a red light. Cepa and Jossund had testified that Jennett had a green light. The court found that the cycle of the green light and left turn arrow confirmed that Mr. Sih had not had a left turn arrow during this time.

Accordingly, the district court found that Mr. Sih failed to prove the accident was caused by the negligence of Jennett.

## II

## DISCUSSION

### A.

We first address Mr. Sih's contention that the district court committed reversible error when it ruled that Deputy Lewallen could not testify as an expert about whether the Buick's headlights were illumined at the time of the accident.

The Government first submits that Mr. Sih did not preserve this issue because he failed to apprise the district court of the substance of the testimony as required by Federal Rule of Evidence 103(a). The Government urges that a party who is complaining about the exclusion of evidence must demonstrate, with an offer of proof, why the evidence would have been helpful to his case. The Government acknowledges that a party need not make a formal offer of proof, but only need make known to the court the substance of the

evidence he wants to present. In the Government's view, Mr. Sih failed to make any offer of proof. Mr. Sih responds that the court was advised of the witness' opinion, the basis for that opinion and the officer's training.

The record reveals that the district court did not permit opinion evidence from Deputy Lewallen because the Deputy was not listed as an expert on the pretrial order. When Mr. Sih's counsel attempted to ask Deputy Lewallen about the headlights of the eastbound Buick, the Government objected. After some clarification, the court, specifically referring to the headlights, asked Mr. Sih's counsel "[w]hat would be the basis of this witness' testimony?" R.22–1 at 22. Counsel responded that the Deputy would testify about his observation of the headlights, particularly the discoloration and the stretching of filaments. Counsel explained that, from these observations, the Deputy would offer a conclusion as to whether the headlights were on or off at the time of the accident. The district court then concluded that the Deputy could not testify on those topics because he had not been listed as an expert.

Federal Rule of Evidence 103 provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected," and when the court excludes evidence "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed.R.Evid. 103(a). We have explained that "[a]n offer of proof is needed 'so that the reviewing court [can] determine whether any error affected [plaintiff's] substantial rights.'" *Young v. Rabideau*, 821 F.2d 373, 376 (7th Cir.1987) (quoting *Fidelity & Deposit Co. of Md. v. Reliance Fed. Sav. & Loan Ass'n*, 795 F.2d 42, 44 (7th Cir.1986)). Other courts also have articulated the pur-

pose of an offer of proof; they have noted that Rule 103 requires that the offer "make a record so that an appellate court can get a clear idea of whether error has been committed in sustaining objections to questions asked." *Frisone v. United States,* 270 F.2d 401, 402 (9th Cir.1959). Further, a formal offer of proof is not necessary and the error does not have to be precisely specified. *See United States v. Sweiss,* 814 F.2d 1208, 1211 (7th Cir. 1987). However, the plaintiff is required to "make the appropriate arguments to the district court that he now makes on appeal in order to alert the trial court to the issue." *Young,* 821 F.2d at 376.

The transcript reveals that Mr. Sih's counsel did make the district court aware of the substance of the evidence to be offered. After counsel elicited testimony from the deputy about his training, experience and specific courses he had completed, he asked the officer the purpose of his inspection of the vehicle. Deputy Lewallen testified that, after receiving information from witnesses at the scene, he attempted to determine whether the headlights had been on or off at the time of the accident. At this point, the Government objected. Mr. Sih's counsel explained to the court that Deputy Lewallen would provide testimony on "the discoloration and stretching of filaments" which gave the officer the basis for his "conclusion as to whether the lights were on or off at the time of the accident." R.22–1 at 22.

The district court was certainly alerted adequately that the Deputy would offer technical testimony about the condition of the headlights and then offer an opinion of the significance of those findings on the issue of whether the headlights were illumined at the time of the accident. Indeed, the fact that the district court was apprised adequately of the situation is evident from its ruling. Accordingly, we conclude that, because the district court was apprised adequately of the basis of Mr. Sih's proffer to permit a ruling and because an adequate record was made for our review, the purpose of Rule 103 was fulfilled and adjudication of the issue on the merits is warranted.

We therefore turn to the question of whether the district court erred when it decided to exclude the Deputy's testimony because he was not listed as an expert on the final pretrial order. We review the trial court's decision whether to admit or exclude evidence for an abuse of discretion because this question is a matter within the competence of the trial court. *See Ellis v. City of Chicago,* 667 F.2d 606, 611 (7th Cir.1981).

■ Mr. Sih contends that the witness was disclosed in full compliance with the pretrial order. He further asserts that he is unaware of any rule that expressly states that the pretrial order must contain a separate list of expert witnesses. The Government contends, on the other hand, that the trial court properly excluded the expert testimony concerning the Buick's headlights because Mr. Sih had not disclosed previously this expert testimony and therefore was in violation of Rules 26[2] and 16,[3] of the Federal Rules of Civil

---

**2.** Federal Rule 26 governs discovery and required disclosures. Specifically, Rule 26 requires that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."

**3.** Federal Rule 16 concerns pretrial conferences and specifically provides that "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final

Procedure as well as the Final Pretrial Order. The Government further asserts that, even if it had been informed adequately, the testimony should still have been excluded because all of the photos taken by the Deputy were lost, and the Buick's headlights had not been preserved.[4]

The final pretrial order contained two provisions that are relevant to our inquiry. Provisions "d" and "e" require respectively "a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling or to the qualification of, any witness identified on the list," and "stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand." R.18 at 2. To comply with provision "d" of the pretrial order, Mr. Sih provided a witness list that included economist, Thomas Donnelly, Deputy Lewallen, several eyewitnesses and physicians. Beside Donnelly's name, Mr. Sih noted "(economist)"; beside Lewallen's name he listed "(post-occurrence investigation)." App. at 19; R.18 at 2(d).

To comply with provision "e" of the pretrial order, the parties submitted curriculum vitae of several expert witnesses. Mr. Sih provided the curriculum vitae for his economist, Donnelly, for the trauma surgeon present at the initial hospitalization of Mr. Sih and his wife, and for an eye surgeon for Mr. Sih. However, Mr. Sih did not provide a curriculum vitae for Deputy Lewallen. See App. at 22; R.18 (attachment).

Mr. Sih contends that he complied with provision "d" by listing all his witnesses and that section "e" only required stipulations to the qualifications of experts in the form that could be read to the jury at the time the witness takes the stand. Because the trial was a bench trial, he argues, this provision was not utilized or necessary especially in light of the fact that Lewallen testified to his qualifications at trial.

We cannot say that the district court committed error in ruling that Mr. Sih did not comply substantively with the requirements of the district court's pretrial order. Mr. Sih listed qualifications for some experts, but failed to list Deputy Lewallen as an expert or to provide his curriculum vitae. The Government was entitled to conclude, given this state of affairs, that Mr. Sih would not call the Deputy as an expert. Indeed, this misapprehension on the part of the Government is evidenced by its objection to his testimony in the pretrial order solely on hearsay grounds. Mr. Sih not only failed to comply with the pretrial order, but also failed to comply with the requirement of Federal Rules of Civil Procedure 26(a)(2)(A) which requires a party to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."

Mr. Sih relies on several cases to support his position that he should have been entitled to offer the Deputy's expert testimony even though he had not been identified as an expert in the pretrial order.[5]

<hr>

pretrial conference shall be modified only to prevent manifest injustice."

**4.** At trial, the parties discussed the headlights that were unavailable at the time of trial. The plaintiff explained that the headlights were never in his possession, nor did he believe they were in the possession of the Sheriff's Department. Jennett's vehicle was towed to a towing yard where Jennett had access to the car and took pictures of it. R.22–1 at 22.

**5.** Mr. Sih also submits that the Government waived any objections not presented in the pretrial order. We cannot accept this argument. The Government asserted at trial that it was unaware that the Deputy would provide expert testimony; the witness was not listed as an expert, nor was an expert report

We shall address the most pertinent of these authorities.

Mr. Sih submits that *Sadowski v. Bombardier, Ltd.*, 539 F.2d 615 (7th Cir.1976) supports his position. In *Sadowski*, this court upheld, under an abuse of discretion standard, the district court's decision to *admit* evidence. The trial court admitted testimony from witnesses regarding the cause and effect of the breaking of a particular spring on a snowmobile. Neither witness was listed in the pretrial order as experts, and the defendant objected when the plaintiff attempted to ask questions calling for an expert opinion. The trial court determined that the opinions were not being given as expert testimony. This court, however, noted that the plaintiff's counsel was at least "skating very close to the line dividing expert from lay testimony" and "total candor might have required them to indicate [that the witnesses] did have some expert ability." *Id.* at 620. However, in spite of this conclusion the court noted that the two witnesses were in the pretrial report, the record did not show knowing concealment, and the witnesses' testimony only assumed a new significance after the parties entered a stipulation stating that the spring was defective, only leaving the disagreement of the causation/effect of the defective spring. The court determined that, even if the witnesses were considered "undisclosed experts," this court would not interfere with the trial court's determination not to hold the parties to the pretrial order. The court would not interfere with this departure unless there was a clear abuse of discretion or manifest injustice.

*Sadowski* is of little help because it deals with a court's decision to admit evidence that did not comply precisely with a pretrial order. This court found the trial court did *not abuse its discretion* in admitting the evidence. Mr. Sih, however, is attempting to demonstrate that the district court abused its discretion in adhering to the pretrial order and in excluding the evidence. *Sadowski* therefore sheds little light on whether excluding evidence that does not comply with a pretrial order is an abuse of discretion.

Our decision in *Patel v. Gayes*, 984 F.2d 214 (7th Cir.1993), also provides little assistance. *Patel* dealt with the attempt to use a treating physician's testimony to offer expert opinions. The court's opinion emphasizes that it is the substance of the testimony, not the status of the witness, that determines whether the witness ought to be considered an "expert." Here, the proffered testimony of the Deputy, as the investigating officer, involved conclusions that he had reached with respect to the automobile's equipment based on his specific training, knowledge and experience.

Under these circumstances, we believe that the district court acted well within its discretion when it determined that the testimony of the Deputy concerning the headlights ought to be excluded.

### B.

We now turn to Mr. Sih's submission that the district court's finding that the Buick's headlights were on was clearly erroneous.

The district court found "Jennett had his headlights on at and prior to the time of

---

furnished. Because the pretrial order failed to indicate Deputy Lewallen would provide expert testimony, the Government hardly can be said to have waived such a challenge by failing to object to his expert testimony at the

pretrial order stage. The essence of the Government's objection at trial was that it was unaware Deputy Lewallen would testify as an expert.

the accident." R.29 at 7. "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a).[6]

■ Mr. Sih emphasizes that there were four independent eyewitnesses who gave statements the night of the accident and indicated that the Buick's lights were off. He further asserts that the court relied solely on one witness' statements that the Buick's lights were on and another witness' misinterpreted statement. Indeed, Mr. Sih questions whether these two witnesses, Cepa and Jossund, were even following the Buick. He notes that these witnesses testified that they were driving two or three seconds behind the Buick for approximately five miles; but five witnesses testified that no car was following the Buick. Jennett himself indicated that no vehicle followed him. Finally, Mr. Sih, also notes that Deputy Lewallen would have testified that the headlights were not on at impact.

Simply put, the district court certainly was not obliged to accept the view of the majority of the witnesses or Mr. Sih's critique of the evidence. Rather, it is the obligation of the district court to evaluate all the evidence critically and to accept the evidence that it believes to be most trustworthy. Here, an experienced jurist performed precisely that function. There certainly was a basis for the court's finding. Although there were four independent witnesses who testified that the Buick was traveling without its headlights illuminated, there was at least one (and possibly two) witnesses who testified that the lights were on. Moreover, all four witnesses who testified that the lights were off were in vehicles sitting at the intersection of the cross street, perpendicular to the direction in which the Buick was traveling. All four witnesses admitted, moreover, that the events happened rapidly. The district court understandably reasoned that these witnesses had not focused on the Buick entering the intersection until the moment of impact. Their testimony is unreliable with respect to later points in time because the Buick's lights were broken in the impact.

Jennett did not remember a car following him at night, presumably with its lights on, for five miles, but the district court was permitted to draw the conclusion that the presence or absence of a following vehicle might not have been recollected. Other witnesses at the intersection also testified that they had not observed a car following the Buick, but this lack of observation could be explained by the fact that their attention was drawn to the wreck only at the moment of impact. After a collision in the intersection, it would not be likely for an observer to survey the surrounding area to ascertain specifically whether any vehicle had been following the Buick.

Mr. Sih also notes, correctly, that the district court found that both Cepa and Jossund had testified that the Buick had his headlights on. However, only Cepa made this specific observation. Jossund, when asked whether the Buick's lights were on, indicated only that he remembered the Buick's taillights. Jossund did not indicate specifically that he had seen the Buick's headlights. The district court either misapprehended Jossund's testimony or inferred that this testimony necessarily meant that the headlights were on. Even if the trial court misconstrued Jossund's testimony or drew an impermissible inference from it, we do not believe that such a lapse renders infirm the remainder

---

**6.** The plaintiff asserts the court abused its discretion, but he does not refute in his reply brief the clearly erroneous standard applied by the defendant.

of the district court's findings. Both Jossund and Cepa testified that the dark, hilly road would have been impossible to drive at night without the assistance of headlights. Further, the court noted that Jennett testified at trial that the Buick's headlights were illumined. The district court found his testimony persuasive and reliable because the Government, not he, was facing liability. Moreover, noted the court, he was no longer working for the United States and therefore had no reason to fear other economic reprisals for any unhelpful testimony that he might give.

Finally, Mr. Sih's assertion that Deputy Lewallen would have testified, had he been permitted, that the Buick's lights were not operating at the time of the crash must be disregarded. This testimony was not allowed by the district court. As we have held earlier in this order, that ruling by the district court was within the court's sound discretion. Therefore, the Deputy's testimony on this point may not be relied upon before this court when challenging the sufficiency of the evidence.

"Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The district court decided that Cepa and Jossund provided more credible and reliable testimony. The court supported this conclusion with logical reasoning and acknowledged the conflicting testimony.

The district court performed precisely the function expected by the trier of fact. Its findings cannot be disturbed.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED