972 F.2d 339
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Pauline M. EWALD, Plaintiff-Appellant,
v.
DEPARTMENT OF WASTE MANAGEMENT, Commonwealth of Virginia;
Cynthia V. Bailey; K.C. Das; Winston Evans,
Defendants-Appellees.
 No. 91-1583.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1992
Decided: July 22, 1992
 
 Argued: Richard Edward Condit, Government Accountability Project, Washington, D.C., for Appellant.
 Guy Winston Horsley, Jr., Senior Assistant Attorney General, Richmond, Virginia. for Appellees.
 On Brief: Robert Guild, Government Accountability Project, Washington, D.C., for Appellant.
 Mary Sue Terry, Attorney General of Virginia, R. Claire Guthrie, Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attorney General, Jessica Jones, Senior Assistant Attorney General, Office of The Attorney General, Richmond, Virginia, for Appellees.
 Before SPROUSE, Circuit Judge, KISER, United States District Judge for the Western District of Virginia, sitting by designation, and BLATT, Senior United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Pauline M. Ewald (herein "Ewald"), plaintiff below, appeals from the entry of summary judgment in favor of the Commonwealth of Virginia, Department of Waste Management (herein"DWM"), Cynthia V. Bailey (Director), K.C. Das (Supervisor), and Winston B. Evans (Bailey's secretary), by the United States District Court for the Eastern District of Virginia. Ewald also appeals from the denial of her motion for relief from the time constraints of the pretrial order. Ewald alleged below that the District Court denied her Fifth Amendment right to engage in pretrial discovery. Ewald also alleged that her rights of free speech and due process were violated when she was terminated from her employment. Additionally, Ewald set forth various state law claims in relation to her termination. Ewald contends that her termination was prompted by her complaints of agency mismanagement, while the defendants assert that she was terminated for poor job performance. We affirm the judgment of the District Court in all respects.
 
 
 2
 On October 16, 1990, the district court issued a notice scheduling a pretrial conference for October 25, 1990. The pretrial conference was rescheduled at Ewald's request to permit her to obtain counsel, and on November 8, 1990, a second notice was issued scheduling the pretrial conference for November 29, 1990. Ewald appeared without counsel at this rescheduled pretrial conference and the court issued a pretrial order. One day prior to a hearing set on defendant's motion for summary judgment, and fifteen days before the trial date, Ewald filed an emergency motion for relief from the pretrial order, claiming that she was denied adequate opportunity for discovery, but the district court denied her motion.
 
 
 3
 From September, 1986, to August, 1988, Ewald was employed by DWM as Manager of the Superfund Pre-Remedial Program. Her responsibilities included supervision of site investigation, environmental testing, preliminary assessment, and ranking of hazardous waste sites in Virginia. Ms. Cynthia Bailey was the Director of DWM in 1986 when Ewald began her employment. In her affidavit, filed with the summary judgment motion, Bailey stated that she became concerned with Ewald's job performance as early as the fall of 1986, and that on at least two occasions she had counselled Ewald about her poor job performance.
 
 
 4
 In late 1987, Ewald first contacted the EPA to report alleged acts of grant misappropriation within the DWM. In April, 1987, Dr. K.C. Das became Ewald's direct supervisor. In his affidavit, filed with the summary judgment motion, Das stated that, from the day of his arrival, he received only minimal support and cooperation from Ewald. He further stated that on numerous occasions he instructed Ewald to accomplish program directives and that she either did not respond or responded in an untimely manner. In August, 1987, Das evaluated Ewald and gave her a rating of 23, which he stated was only marginally satisfactory.
 
 
 5
 DWM had a standing policy that an employee could be terminated if that employee received four Group I disciplinary notices, or one Group II disciplinary notice combined with three Group I disciplinary notices. During the period from November 5, 1987, to August 29, 1988, Das issued six disciplinary notices to Ewald which are listed as follows:
 
 
 6
 1.November 5, 1987 -Group I notice issued for disrup tive behavior at a meeting.
 
 
 7
 2.April 13, 1988 -Group II notice issued for consis tently failing to perform duties and provide notice of absences during office hours.
 
 
 8
 3.July 11, 1988 -Group I notice issued for failure to be at work, i.e., arriving late and leaving early without informing staff.
 
 
 9
 4.July 22, 1988 -Group I notice issued for disrup tive behavior at a meeting.
 
 
 10
 5.August 25, 1988 -Group I notice for unsatisfactory attendance.1
 
 
 11
 6.August 29, 1988 -Group I notice issued for failure to produce weekly activity reports for several weeks and to respond to an outstanding request to develop an annual program plan. Ewald was previously reminded on both July 25, 1988, and April 16, 1988, of the request to develop the annual program plan.[2]
 
 
 12
 On August 29, 1988, Dr. Das requested a meeting with Ewald. During the meeting, Ewald was given the August 29, 1988, termination notice described above. Ewald refused to sign this notice to acknowledge its receipt. In his affidavit, Dr. Das stated that he told Ewald that she was being terminated when he gave her the notice. The substantive conversation between Ewald and Das seems to have ended at that point. In her affidavit, Ewald stated that she then attempted to discuss the charges and the termination action with her Director, Ms. Bailey, but that Ms. Bailey's secretary had informed Ewald that Ms. Bailey was unavailable to meet with her.
 
 
 13
 In reviewing the district court's grant of summary judgment, we apply the same standard applied by the district court under Federal Rule of Civil Procedure 56(c). Ottensmeyer v. Chesapeake & Potomac Tel. Co., 756 F.2d 986, 992 n.12 (4th Cir. 1985). Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). In assessing the correctness of the court's grant of summary judgment, we must examine the record in a light most favorable to the party opposing the motion. Smith v. University of North Carolina, 632 F.2d 316, 338 (4th Cir. 1980).
 
 
 14
 In reviewing the district court's denial of Ewald's emergency motion for relief from pretrial order, the standard to be applied is whether the district court abused its discretion in applying Federal Rule of Civil Procedure 16 governing pretrial conferences. Sadowski v. Bombardier. Ltd., 539 F.2d 615 (7th Cir. 1976).
 
 I.
 
 15
 Ewald first argues that the district court erred in its denial of her emergency motion for relief from the court's pretrial order. The pretrial conference had been delayed approximately one month at Ewald's request. Ewald appeared at the pretrial conference, but alleged that she did not receive a copy of the pretrial order until a full three months after it was entered. DWM does not argue that Ewald received proper notice of the order by mail, but DWM argues instead that Ewald was not entitled to notice by mail. We find DWM's argument unpersuasive on that point. Pursuant to Federal Rule of Civil Procedure 77(d), the clerk of court must immediately serve a notice of entry of an order upon each party not in default.
 
 
 16
 In footnote six of its order,[3] the district court cited some of the factors it considered in denying Ewald's emergency motion. One factor was that Ewald possessed a law degree and demonstrated competence in both oral advocacy and legal writing and analysis. The court also stated that Ewald's motion and brief indicated Ewald's awareness of the rules and time limitations of which she complains. In addition, the court noted that Ewald had repeatedly attempted to delay this case, and that she was reminded in court of her obligations to prosecute her case and to respond to the motions filed by the defendants. The court indicated that Ewald's only response to defendants' motions was to seek further delay, and that Ewald had approximately eight months since filing her complaint to offer any deposition testimony or affidavits to corroborate her material allegations, but she had not done any of this.
 
 
 17
 From the record, it appears that Ewald knew about the pretrial order at least one month before the motion for summary judgment was heard, but did not file her emergency motion until the day before the summary judgment hearing. The determination as to whether or not parties should be held to pretrial orders is a matter left generally to the discretion of the district court. Sadowski v. Bombardier, Ltd., 539 F.2d 615 (7th Cir. 1976); De Laval Turbine, Inc. v. West India Industries, Inc., 502 F.2d 259, 263 (3rd Cir. 1974). Although we find that Ewald was originally entitled to notice by mail of the pretrial order, we do not find that the district court abused its discretion in its denial of Ewald's emergency motion after consideration of all the factors involved in this case.
 
 II.
 
 18
 Next, Ewald asserts that, in response to defendant's summary judgment motion, she raised material issues of fact, concerning her First Amendment claim that she was terminated because she engaged in protected speech as a "whistle-blower." The district court rejected Ewald's argument, employing the analysis outlined in Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134 (4th Cir. 1990). In Huang, this Court held that, in order to prevail on a First Amendment whistle-blower claim, the plaintiff must satisfy a three-prong test: (1) plaintiff's expressions must have involved a matter of public concern; (2) plaintiff must have been deprived of some valuable benefit; and (3) "but for" the protected expression, the employer would not have taken the alleged retaliatory action.
 
 
 19
 We find that the district court properly rejected Ewald's protected speech claim because she failed to meet the third prong of this test. This court has described the causation factor as a rigorous requirement:
 
 
 20
 [I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that "but for" the protected expression, the employer would not have taken the alleged retaliatory action.
 
 
 21
 Id., citing Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 417 (1979).
 
 
 22
 For summary judgment purposes, the district court found that Ewald had made statements of public concern prior to her discharge, but that these statements were not the "but for" cause of her discharge. We agree with the district court's finding that Ewald met only the first two prongs of the Huang test, and that her claim failed to meet the "but for" prong of that test.
 
 
 23
 In her affidavit, Ewald stated that her first report to the EPA of alleged wrongdoing concerning grant mismanagement occurred on October 19, 1987. However, it appears from the record that Ewald's job performance problems began in the fall of 1986 while her contact with the EPA admittedly did not begin until the fall of 1987.
 
 
 24
 Ms. Bailey, Ewald's Director, stated in her affidavit that she became concerned with Ewald's job performance as early as the fall of 1986, and that on at least two occasions she had counselled Ewald about her performance. Specifically, Ms. Bailey stated that EPA had complained about Ewald's failure to achieve grant commitments that Ewald had made to EPA and, also, about the difficulty of working with Ewald. Additionally, as previously set forth herein, in April, 1987, Dr. K.C. Das became Ewald's supervisor and it was his view that she failed to provide the support and cooperation he expected of her.
 
 
 25
 These facts support the district court's finding that the "but for" prong of Huang was not met. It is apparent that Ewald's job performance problems began at least one year before her first contact with the EPA. Under these circumstances, we affirm the district court's finding that Ewald did not meet the rigorous causation standard of Huang.
 
 III.
 
 26
 Finally, Ewald asserted that her rights of procedural due process were violated because she did not receive a pretermination opportunity to respond to the charges listed on her termination notice. In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985), the Supreme Court held that a public employee with a property interest in continued employment who is offered post termination administrative procedures must, nevertheless, before termination be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his or her side of the story." Loudermill, 470 U.S. at 546. A pretermination hearing is necessary in order to balance the competing interests at stake: "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of erroneous termination." Id. at 542-543.
 
 
 27
 When post-termination administrative procedures are afforded, such pretermination procedure functions only as"an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46. The pretermination process need not resolve the propriety of the discharge. Id. at 545. See Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986) ("Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstance of the case."), cert. denied, 481 U.S. 1050 (1987). In this regard, the Tenth Circuit has observed: "The pretermination hearing is merely the employee's chance to clarify the most basic misunderstanding or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing." Powell v. Mikulecky, 891 F.2d 1454, 1458 (10th Cir. 1989).
 
 
 28
 The Fourth Circuit itself has indicated that the requirements to comply with Loudermill are minimal. See e.g., Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir. 1987) (holding that Loudermill requires neither a full evidentiary hearing with witnesses nor a neutral decisionmaker). Very recently in Linton v. Frederick County, No. 912189 (4th Cir. May 22, 1992), this court adopted the analysis employed in Seibert v. Oklahoma ex. rel. Univ. of Oklahoma Health Sciences Center, 867 F.2d 591 (10th Cir. 1989), in that the court considered the employment history of the plaintiff in determining whether the plaintiff had received a pretermination hearing. Similar to the facts of this case, the court in Seibert faced a plaintiff with "an extensive history of warnings," id. at 598. Examining the last several months preceding Seibert's termination, the court concluded: "We believe that the totality of the procedures and opportunities which the University afforded the plaintiff were sufficient to satisfy constitutional requirements. Plaintiff was not fired out of the blue. Plaintiff was not fired for reasons he did not know." Id. at 599. In the same vein, a recent published decision involving several warnings over a two-month period found that due process requirements were satisfied when examining the process as a whole. See Aronson v. Gressly, 921 F.2d 907 (10th Cir. 1992). These cases are illustrative of problems in employment relationships that develop over time. The procedures available to an employee in responding should, therefore, also be examined over time.
 
 
 29
 When applying Loudermill to the events of August 29, 1988, and to Ewald's employment history as a whole, the record establishes that Ewald had an opportunity to respond that met or exceeded the minimal requirements of Loudermill. Ewald's employment history with the DWM was replete with written disciplinary notices detailing her deficiencies. Ewald surpassed the minimum of three Group I disciplinary notices and one Group II disciplinary notice that were sufficient to terminate her under DWM policy prior to the August 29, 1988, disciplinary notice. In connection with these disciplinary notices, Ewald had no fewer than four pretermination opportunities to respond to the charges. These opportunities provided Ewald with an adequate means of contesting such notices, as shown by her success in removing one charge that she failed to report to work in a timely manner. Ewald was aware that she had an opportunity to respond to each of these notices; she initiated action contesting the very first notice. While our decision does not turn on this factor, it is interesting to note that Ewald refused to even sign for the receipt of the notice of July 22, 1988, and the final notice of August 29, 1988. Due process requirements are not violated merely because the plaintiff fails to take advantage of available procedures. See, e.g., Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir. 1985), cert. denied, 475 U.S. 1014 (1986); Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982), cert. denied, 459 U.S. 1017 (1982).
 
 
 30
 It is clear that these notices detailing disruptive behavior and a failure to perform her duties made Ewald liable to discharge even in the absence of the additional charges detailed in the August 29, 1988 notice. This was stated directly to Ewald in the notice she received on July 22, 1988: "The fact that [Ewald] now has three active Group I offenses and one active Group II offense are grounds for automatic dism[iss]al."
 
 
 31
 When the state has exceeded the requirements of due process by providing the employee with an opportunity to respond to each of the violations that, taken together, can lead to termination, the pretermination requirements of Loudermill are fully satisfied. Due process does not require further interference with the state's recognized interest in ridding itself of incompetent and disruptive employees. As the Supreme Court stated in Loudermill: "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." 470 U.S. at 546.
 
 
 32
 In addition, when discussing the requirement for a hearing, Loudermill distinguishes terminations based on arguable issues from those based on objective facts. Id. at 544 & n.9. The relevant objective fact in this case is that Ewald had accumulated adequate notices of sufficient severity to warrant termination under DWM policy. She was accorded due process in connection with each of these notices.
 
 
 33
 Loudermill does not require an additional hearing when the only remaining issue is the objective fact that Ewald had accumulated sufficient notices to be terminated.[4]
 
 
 34
 In sum, upon a thorough review of Ewald's extensive history of both oral and written warnings, this court concludes that Ewald was afforded an adequate pretermination hearing under the standards enunciated in Loudermill and interpreted by later cases decided by this court. It is clear that Ewald was aware of the reasons which formed the basis for her termination and that she was not fired out of the blue. She had many opportunities to respond during the approximately two year period from the fall of 1986, to her date of termination on August 29, 1988. We conclude that the opportunities for pretermination hearings provided to Ewald adequately addressed the underlying interests outlined by the Loudermill court. Id. at 542-543. Consequently, the order of the district court is
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 This notice was rescinded as noted on the August 29, 1988, notice, because Ewald made a verbal presentation of a formal grievance, and was able to provide proof to refute this charge
 
 
 [2]
 This notice had an attachment, dated August 25, 1988, showing two items. The first item was the unsatisfactory attendance charge with a handwritten notation that the charge was no longer relevant. The second item contained charges of unsatisfactory job performance as listed in number 6 above
 
 
 [3]
 See page 201 of the Joint Appendix
 
 
 [4]
 Reversing the factual situation found in Loudermill, 470 U.S. at 544 and n.9, the United States Supreme Court indicates that where a termination is based on objective facts, rather than on subjective facts, an additional pretermination hearing is not necessary when earlier pretermination hearings have been given to the same employee