WILLIAM KOLIAS et al., Plaintiffs-Appellees, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant (Carol Hinich, Defendant-Appellee).

First District (1st Division) No. 85—0837

Opinion filed October 20, 1986.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant.

Joseph F. Dvorak, of Cicero, for appellee Carol Hinich.

Keith L. Young, of Lambruschi, Young & Associates, of Chicago, for other appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs filed a declaratory judgment action for a determination of liability coverage under an automobile policy issued by defendant, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), to defendant, Carol Hinich. After a bench trial the trial court entered a declaratory judgment against State Farm finding that its policy was in effect on the accident date. In this appeal State Farm contends that the policy covering the Hinich automobile was effectively cancelled on September 2, 1979, which was seven days prior to the collision for which plaintiffs sought liability coverage.

On September 9, 1979, the plaintiffs were involved in a two-vehicle collision with Carol Hinich. At that time, Hinich was driving her 1973 Oldsmobile. Plaintiffs subsequently brought suit against Hinich for personal injuries allegedly resulting from that accident. Based on an alleged prior cancellation notice of the policy covering the Oldsmobile, State Farm denied coverage to Hinich in the personal injury action. Plaintiffs then instituted the present declaratory judgment action against defendants for determination of liability coverage under that policy.

At trial Hinich testified that she was insured as a driver on her husband's policies with State Farm from 1963 through August of 1977, when they were divorced and she received title to the Oldsmobile. It was established that a previous policy was issued to her former husband for the Oldsmobile, and it was effective from July 9, 1976, through October 24, 1978. However, that policy was cancelled

for nonpayment of the balance of the premium. Hinich was able to produce cancelled checks payable to State Farm for January 9, 1978, and July 7, 1978, in the amounts of $96.25 and $96.90 for the Oldsmobile. However, she was unable to produce a cancelled check for the subsequent one-year period.

It was further established that another policy was issued to defendant's former husband for a 1967 Ford. That policy was effective from July 16, 1977, through January 16, 1979. The last premium for that policy was paid by Charles Hinich on August 4, 1978. In either October or November 1978, Hinich called her State Farm agent, Michael Maione, and asked him if he would cancel the policy on the Ford since the vehicle was not operable. According to Hinich, Maione told her that the balance of the premium paid on the Ford would be applied to the Oldsmobile. However, Maione contradicted this testimony and stated that, although he told Hinich that he would cancel the policy on the Ford, he did not tell her that the balance of the premium would be shifted to the Oldsmobile in January 1979. It was further established that it was not State Farm's practice to "carry over" a premium refund from one policy to another existing policy. The policy on the Ford expired at the end of the six-month premium period for nonpayment of the renewal premium.

In early July 1979 Hinich contacted Maione concerning coverage for her son's recently acquired 1971 Chevrolet and also for the Oldsmobile. After taking the relevant information over the telephone, Maione completed applications on each vehicle. Subsequently, Hinich sent a check for $100 to Maione as a deposit on the two policies. Maione had informed her that she would receive a notice for the balance of the premium in the mail. Upon receiving the applications and deposit, State Farm's regional office in Bloomington first issued a separate policy for each application, which was its regular business practice. Policy No. 3474—105—AIO—13 was assigned to the Chevrolet and named Michael Hinich as the insured. Policy No. 3474—106—AIO—13 was assigned to the Oldsmobile and named Carol Hinich as the insured. However, before both policies were sent to Hinich and her son, they were sent to the underwriting department. On July 31, 1979, the underwriting department, relying on a Secretary of State's report concerning two 1978 traffic convictions of Hinich's son, rejected both policy applications. One of those traffic violations included a conviction for illegal transportation of alcohol.

State Farm was able to produce a yellow file copy of Mrs. Hinich's cancellation notice. That copy was dated August 2, 1979. Apparently Carol Hinich's application was rejected because her son was

considered a member of her household. State Farm maintained that the two notices, each effective September 2, 1979, were mailed to 6112 North Emerson in Des Plaines, with a zip code of 60018, which was the address listed in the Hinich application. Carol Hinich admitted receiving the notice cancelling her son's policy, and she also conceded that the refund check for her son's policy was sent and received at her address. Hinich also admitted that her son endorsed that check. Hinich further conceded that she received a refund check for policy No. 3474—106—AIO—13 (Oldsmobile) and that she cashed that refund check on August 7, 1979. However, Hinich denied receiving the cancellation notice for that policy. Hinich maintained that she was under the impression that her refund check was for the cancellation of her son's policy.

It was further established that from 1963 Hinich lived continuously at 6112 North Emerson in Rosemont. Although she never lived in Des Plaines, Hinich admitted that her mailing address had been Rosemont in care of Des Plaines. Her driver's license also reflected a Rosemont-Des Plaines address. It was further established that the declarations page of a previous policy covering the Oldsmobile reflected a Des Plaines address and that Hinich never advised State Farm or agent Maione that Des Plaines was not her mailing address.

Richard Skala, manager of customer services at the Des Plaines post office, testified that with the use of zip codes the town or city name of Des Plaines or Rosemont was not important to mail delivery. In 1979 all mail deliveries for the area using zip code 60018 were made from the Des Plaines post office.

After hearing this evidence the trial court entered judgment against State Farm. In doing this the court, in its memorandum opinion, held that State Farm had failed to produce sufficient proof that cancellation notice for the Oldsmobile was sent to the named insured, Carol Hinich, at her Rosemont address. The court also characterized the address appearing on the notice as wrong. In addition, in rendering that decision, the court also relied upon State Farm's inability to produce the statutorily described post office form and the agent's copy of the cancellation notice.

As indicated above, State Farm contends that the policy covering the Oldsmobile was effectively cancelled on September 2, 1979, or seven days prior to the automobile collision for which liability coverage was sought. Section 143.14 of the Illinois Insurance Code provides as follows:

> "No notice of cancellation of any policy of insurance, to which Section 143.11 applies, shall be effective unless mailed by

the company to the named insured, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form. A copy of all such notices shall be sent to the insured's broker if known, or the agent of record." Ill. Rev. Stat. 1983, ch. 73, par. 755.14.

It was established that cancellation notices were prepared for each policy by an underwriting secretary who typed the original notice along with three copies. The original was then signed by the supervisor of the underwriting department. In addition, the underwriting typist prepared a certificate-of-mailing list. The original cancellation notice, the yellow file copy and the mailing list were then sent to the mail room. A clerk in the mail room then compared the envelopes containing the cancellation notices with the yellow file copies of the notices. The envelopes were then compared to the mailing list, and the mail room clerk subsequently affixed a time stamp on the yellow file copy. The envelopes were then sealed, and postage was applied to each envelope. The clerk then took the envelopes and the mailing list to the post office, where the lists were stamped and returned by the clerk. The mailing lists were then inserted into the binders, where they were supposed to be kept indefinitely.

It is true that a mailing list bearing Carol Hinich's and her son's names was not found in their binders. However, the search for these notices took place almost five years after the notices of cancellation were sent. Nonetheless, State Farm did produce the yellow file copy of Carol Hinich's notice, which bore a postal clerk's stamp, which signified that the notice had been processed and mailed on August 2, 1979. It was established that if the yellow copy were not stamped, the original would not have been mailed.

Plaintiffs and defendant Hinich argued during trial that State Farm had not complied with section 143.14 since it had failed to produce proof of mailing upon a post office form or the agent's copy of that notice. However, a careful reading of the statute reveals that it does not specify any length of time that the post office form must be maintained. In fact, the statute also does not require that the agent must retain his copy of the cancellation notice. Furthermore, the statute fails to indicate that proof of mailing cannot be shown by other methods.

██ We feel that State Farm has adequately established mailing of the cancellation notice for the Oldsmobile by other methods. As indicated above, it was established that a postal clerk's stamp was placed on the yellow file copy of the cancellation notice for the Oldsmobile

and that this stamp indicated a mailing date of August 2, 1979. It was further established that if the yellow copy were not stamped, the original would not have been mailed. Secondly, Carol Hinich testified that agent Maione advised her that she was not covered when she notified him of the accident in question. This testimony demonstrates that agent Maione must have received his copy of the cancellation notice. Moreover, Carol Hinich admitted that she received a refund check payable to her for policy No. 3474—106—AIO—13 (Oldsmobile) and that it was mailed to the same address as that appearing on the yellow cancellation notice. Hinich also conceded that a second refund check, payable to her son, was mailed to the same address and was in fact endorsed by her son. Lastly, Hinich admitted that she received her son's cancellation notice, which was mailed at the same time and to the same address as that on the yellow copy of her own cancellation notice. Accordingly, Hinich admitted receiving three of the four documents sent to her.

■ At trial the court commented on the fact that there was no direct evidence of mailing or testimony by the mail clerk who performed the mailing. However, it is well established that mailing need not be shown by direct testimony. (See generally *Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 131, 356 N.E.2d 1150.) The testimony of the mail room clerk would have been merely cumulative since, given the routine nature of the job, the clerk could not have been expected to remember a particular cancellation notice or receiving a particular mailing list with Hinich's and her son's names on it from the post office. At most, the clerk would have only reiterated other testimony describing the company's mailing practices. See 1A Wigmore, Evidence sec. 95, at 1640 (1983).

■ Plaintiffs and Hinich also characterized the Des Plaines mailing address on the yellow cancellation notice as incorrect. However, it was established from the testimony of Mr. Skala, manager of customer services at the Des Plaines post office, that with the use of zip codes the town or city names of Des Plaines or Rosemont were not important to mail delivery. Since the yellow file copy of the cancellation notice correctly listed the zip code as being 60018, with the proper street address, we must conclude that the original cancellation notice was sent to the correct mailing address. In addition, it was established that the Des Plaines mailing address given to State Farm was the same mailing address listed for another insurance policy on the same vehicle. Accordingly, we do not believe that Hinich can now argue that the mailing address on the yellow cancellation notice was incorrect. See *County of Williamson v. Standard Accident Insurance*

*Co.* (1961), 32 Ill. App. 2d 363, 366-67, 178 N.E.2d 149.

Plaintiffs and Hinich also argue that State Farm did not produce any direct evidence to establish the mailing of Hinich's cancellation notice for the Oldsmobile. However, as stated above, the yellow copy of the cancellation notice retained in the file bears the postal clerk's stamp, which indicated that the notice was processed and mailed on August 2, 1979, in accord with State Farm's office practice. It was further established that that copy was stamped when the original was mailed.

After having carefully examined the record on appeal, we are of the opinion that the evidence produced by State Farm established that it sent a cancellation notice for the Oldsmobile to Hinich at her last known address on August 2, 1979, in full conformity with section 143.14 of the Illinois Insurance Code. Hinich admitted that she and her son received premium refund checks, as well as the cancellation notice for the policy issued to her son on the Chevrolet, pursuant to the same mailing practices. Moreover, it was further established by State Farm's witnesses that State Farm's business practice was to keep all returned mail slips in an individual's application file. However, examination of Hinich's file for the policy in question revealed no returned mail slip. Under such circumstances, we conclude that the trial court erred when it required State Farm to produce the post office form, thereby refusing to accept alternative proof of mailing.

Lastly, plaintiffs and Hinich argue that the trial court rendered judgment in their favor based on the credibility of the witnesses. However, the issue in this case is whether the trial court correctly interpreted section 143.14 of the Illinois Insurance Code as requiring State Farm to produce the post office form and the agent's copy of the cancellation notice. We have concluded that the trial court's restrictive interpretation of section 143.14 was incorrect. Accordingly, the trial court's declaration that liability coverage was in effect at the time of the accident will be reversed.

Judgment reversed.

CAMPBELL and BUCKLEY, JJ., concur.