In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1363

ANDREW J. HOTALING, M.D.,

Plaintiff-Appellant,

v.

CHUBB SOVEREIGN LIFE INSURANCE CO.
and JEFFERSON PILOT FINANCIAL LIFE
INSURANCE CO.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 23--Harry D. Leinenweber, Judge.

Argued September 20, 2000--Decided February 21, 2001

Before COFFEY, EASTERBROOK, and EVANS, Circuit
Judges.

COFFEY, Circuit Judge.  After the death of his
wife (Sylvia Morris), Andrew J. Hotaling, M.D.,
sued Chubb Sovereign Life Insurance Company and
Jefferson Pilot Financial Life Insurance Company
(collectively "Chubb") for $1 million alleging
that a life insurance policy issued by Chubb (and
covering his deceased wife) was in effect at the
time of her death. The primary issue both at
trial and on appeal is whether Chubb complied
with 215 Ill. Comp Stat. 5/234, which requires
all life insurance companies licensed to operate
within Illinois to send premium-due notices to
their policyholders before allowing a life
insurance policy to lapse./1 After a bench
trial, the district court found that Chubb had
complied with the Illinois statute and entered
judgment in favor of Chubb.  We affirm.

I.  BACKGROUND
  On May 8, 1995, Sylvia Morris purchased a
universal life insurance policy from Chubb which
provided life insurance coverage of $1 million.
The policy required an annual premium of
$2,570.04 to be paid on or before the eighth day
of May each year. Additionally, the policy

specifically provided that "[i]f the premium is not paid within the [61-day] Grace Period, this policy will lapse or terminate without value." When Morris purchased the policy in 1995, she paid the first year's premium in advance. It is undisputed that during the following year (1996), Chubb sent a premium-due notice to Sylvia Morris and the premium was timely paid by her husband, Andrew Hotaling. This dispute arises because Hotaling claims that Chubb failed to send a premium-due notice to his wife the third year; that is, in 1997.

A.   The Policy Lapses

It should be noted at the outset that at the bench trial Chubb was unable to produce a copy of the premium-due notice it allegedly sent to Sylvia Morris prior to lapsing her policy nor did the carrier introduce the testimony of an employee who specifically recalled sending Morris a notice./2 Despite the absence of a copy of the actual premium-due notice sent to Morris, Chubb maintains that it sent such a notice to Morris on April 22, 1997, in the normal course of its business. Hotaling testified at trial that he did not receive such a notice and that he would have been aware if Morris had received such a notice because he was in charge of paying their family bills.

Chubb additionally asserts that in June 1997 it sent a "lapse pending letter" to Morris alerting her to the fact that her life insurance policy would lapse if a premium payment was not received within the policy's grace period. Chubb introduced a copy of this letter at trial, which reads in relevant part:

Dear Ms. Morris,

Currently your policy does not have enough value to cover the monthly expenses due on May 08, 1997. We are concerned that your policy will lapse without value on July 08, 1997 unless you take immediate action.

The minimum payment is $854.72. Please understand that if this policy lapses, you are losing the financial security and protection this insurance coverage provides you.

* * * *

Please don't let this policy lapse, contact your Chubb Sovereign Life representative listed below or a customer service representative today.

Hotaling denies that either he or his wife ever

received a letter of this nature from Chubb.

According to Hotaling's trial testimony, neither he nor his wife was aware that anything was amiss regarding her life insurance coverage until receiving a "lapse letter" from Chubb dated July 9, 1997, which stated that her policy had lapsed due to non-payment of premiums. The lapse letter stated:

We regret to inform you that your policy coverage with Chubb Sovereign Life Insurance Company is no longer in force because we did not receive your past due premium as prescribed by your policy. We are sorry that you have made this decision to leave our company.

* * * *

Please give careful consideration to reinstating this valuable policy protection. You may have the option of continuing this coverage by completing reinstatement requirements and paying the past due premium of $854.72. Your Chubb Sovereign Life representative listed below or a customer service representative would be available to answer your questions and guide you through this process.

On July 31, 1997, three weeks after receiving the lapse letter, Morris phoned Chubb and requested reinstatement forms pursuant to the information contained in the final lapse letter of July 9, 1997. Chubb forwarded Morris the necessary paperwork the following day, August 1, 1997. The reinstatement letter and application forms Chubb mailed to Morris stated that, for purposes of underwriting, Morris would be required to undergo and pass a medical examination prior to the reinstatement of her policy. Morris scheduled the required medical exam for August 24, 1997. Tragically, before the medical examination date arrived, Morris was diagnosed with terminal brain cancer, rendering her uninsurable. Morris died less than five weeks later.

B.  Procedural History

Following Morris's death, Hotaling requested that Chubb disburse the benefits he was entitled to receive under the terms of Morris's policy. Chubb refused Hotaling's request for payment, maintaining that Morris's policy had lapsed prior to her death due to her failure to pay her premium before the expiration of the policy's grace period on July 8, 1997. Hotaling countered that Chubb could not validly lapse the policy because Morris had never received a premium-due notice alerting her that the policy was about to lapse as required by the Illinois Insurance Code.

Thereafter, Hotaling filed a complaint in the Circuit Court of Cook County, Illinois, on December 14, 1998, alleging that Chubb had violated 215 Ill. Comp. Stat. 5/234.

After Chubb removed the case to federal court, a bench trial was held on December 15, 1999. At trial, Hotaling testified that he had never received a premium-due notice from Chubb or the lapse-pending letter, and argued that the failure to send a premium-due notice pursuant to Illinois law prevented Chubb from legally lapsing Morris's policy.

Chubb, on the other hand, claimed it had complied with the statute by mailing a premium-due notice to Morris, but admitted that it could not produce any witnesses who could testify that they recalled placing Morris's specific premium-due notice in the mail. Chubb, however, did introduce testimony and evidence explaining its usual procedures that insure that premium-due notices are mailed to all customers, such as Morris, who have failed to pay their premiums due in a timely fashion. Chubb called Ronald Reed, an assistant vice-president of information technology at Chubb, who testified that Chubb utilized a computer system which "automatically handles the billing of the premium [as in] the case of the policy of Sylvia Morris." After hearing Reed's testimony and related paperwork documenting Chubb's business practices used to notify its customers of delinquent premium payments, the trial judge made the following findings of fact based on Reed's testimony:

4.   The fact issue in the case was whether the statutorily required notice (215 ILCS 5/234) was mailed by Chubb to Morris. Chubb has an almost fully automated system of mailing premium notices and other correspondence to the holders of its Universal Life Policies. It is set up to bill 19 days in advance. In order to generate these premium notices and other correspondence, Chubb has contracted with Management Applied Programming ("MAP"), a firm located in Santa Barbara, California. The process starts when the Chubb computer in Concord, New Hampshire, which is programmed to generate a list of all policies that premium notices are to be sent (sic) that date. The Chubb computer is connected by leased line with the MAP computer and the list, or abstract, is transferred electronically to California. In turn the MAP computer is programmed to print the name of the insured, the policy number, the premium amount due, and the due date, on pre-printed forms. The premium due notices are checked for quality control, i.e., to insure readability, then checked to make sure that the number of notices "is in close agreement

with the number that should be there." They do not do an actual count because they do approximately 1,000 notices a day. The notices then go to the mail room where a machine automatically folds the notices, [and] stuffs them [into] window envelopes. The notices are then postage metered and taken to a mail drop where they are picked up by the post office.

5.  Two extracts are generated, one by Chubb, which is the list that is transferred to MAP. MAP in turn generates a list of all notices printed by it. The MAP list can only be generated if the initial transmission from Chubb has been successful. The MAP computer is programmed to refuse to print the notices if the system inadvertently fails to print one or more of the notices. Neither MAP nor Chubb, however, keep a duplicate of the actual premium notices sent. Chubb however does keep a copy of all other correspondence to the policy holder, such as lapse warnings and lapse notices.

6.  According to Chubb's records the premium notice process for Morris' policy commenced in Concord, New Hampshire, at 1:08 a.m. EST on April 22, 1997, and was received at MAP in California, at 10:16 p.m. PST, April 21, 1997, 8 minutes later. The notice was printed and programmed to contain the name of the insured, the insured's mailing address, the policy number, the premium due date, and a statement that if payments were not made that the policy would lapse and all payments would be forfeited and the policy would be void.

1.  Chubb's Exhibit #27

Chubb also called Wendalyn Chase, another assistant vice-president at Chubb, to testify regarding the procedures used to contact policyholders regarding premium payments. In the course of her testimony, Chubb introduced (over plaintiff's objection)/3 an exhibit consisting of eight pages of policy and premium information dealing with the policyholders whose names appear on the April 22, 1997 billing extract list both before and after Sylvia Morris's name. This exhibit, marked as Defendant's exhibit #27, reveals that the individuals listed directly before and after Morris on the April 22, 1997 billing extract list made premium payments to Chubb on May 9, 1997 and May 5, 1997, respectively.

At the conclusion of receiving evidence, the trial judge asked the parties to submit written final arguments. He specifically stated:

The question here, the one question I have is--
there are three alternatives here that could have
happened. One is they (Hotaling and Morris) got
the notice and either lost it or disregarded it
or whatever. Another one is that no notice was
ever sent out. The third one is that it was sent
out and never got there. What's (sic) the
ramifications of that? You might comment on that
in your arguments.

After receiving the parties' written arguments
and weighing the evidence at trial, the district
court entered judgment for Chubb stating:

The question therefore is whether the record
contains sufficient evidence to show by a
preponderance of the evidence that Chubb actually
mailed the premium notice to Morris. Both Chubb
and MAP employ electronic means in order to send
out premium notices. In this day and age this is
not unexpected . . . . Direct evidence of mailing
or testimony of the mail clerk is not necessary,
given the routine nature of [the] mailing of such
notices provided there is some corroboration.
Kolias v. State Farm Mutual Automobile Ins. Co.,
102 Ill. Dec. 609, 612 (1st Dist. 1986). The
issue is therefore whether there is sufficient
corroborating evidence to sustain Chubb's burden
of proof on the issue. The corroborating evidence
that Chubb submitted consisted of evidence that
the policy holder directly before Morris and the
policy holder directly after her on the extract
generated by Chubb and sent to MAP apparently
received their notices of premium due because the
premium payments were received by Chubb on May 9,
1997, and May 5, 1997, respectively. This
evidence coupled with the evidence that the
computer program was designed to print all or
none of the premium notices gives the court a
basis to believe that it is more probably true
than not true that the premium notices were
printed and placed in the U.S. mail by MAP as
testified to by Wayne Hayes of MAP. Thus,
assuming that neither Morris nor Hotaling
received the premium notice, it is more probably
true that it was . . . misdirected or lost by the
post office.

The judge then went on and concluded that Chubb
complied with 215 ILCS 5/234 and that the policy
had lapsed for non-payment of the premium.

II.   ANALYSIS
A.   Receipt of Defendant's Exhibit #27

   On appeal, Hotaling argues that the trial court
abused its discretion in allowing Chubb to
introduce in evidence defendant's exhibit #27,
which consists of eight pages of policy and
premium information regarding a list of those

policyholders whose premium-due notices were printed at the same time Morris's notice was printed. As discussed earlier, Chubb did not disclose its intent to use these documents until one week before trial, which was after the court's discovery deadline contained in its final pretrial order. Accordingly, Hotaling had only five working days to review the potential impact of the policyholder payment information contained in the exhibit. Hotaling, therefore, argues that Chubb's late disclosure of exhibit #27 unfairly prejudiced him because he had "no opportunity to explore the nature of the documents or their significance."

1.  Standard of Review

We have consistently held that decisions to receive or bar the admission of evidence at trial as well as the decision to modify a final pretrial order are matters that rest within the sound discretion of the trial court. Sandowski v. Bombardier Limited, 539 F.2d 615, 620-21 (7th Cir. 1976). In Sandowski, we explained:

Trial judges must be permitted wide latitude in guiding cases through preparatory stages, and their decisions as to the extent that pretrial activity should prevent introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that they have clearly abused the broad discretion vested in them . . . . The determination as to whether or not parties should be held to pretrial orders is a matter for the discretion of district court judges.

Id. (internal citations omitted). Thus, we review the district court's decision to accept Defendant's exhibit #27 under the abuse of discretion standard. Gorlikowski v. Tolbert, 52 F.3d 1439 (7th Cir. 1995). "[A]n abuse of discretion occurs when no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." Id. at 1444 (quoting Durr v. Intercounty Title Co. of Illinois, 14 F.3d 1183, 1187 (7th Cir. 1994)).

As this court has explained, we afford great deference to a judge's evidentiary rulings

because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding. Indeed, [a]ppellants who challenge evidentiary rulings of the district court are like rich men who wish to

enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle. Because we give special deference to the rulings of the trial judge[, a defendant] obviously carries a heavy burden.

United States v. Walton, 217 F.3d 443, 449 (7th Cir. 2000) (internal citations and quotations omitted) (brackets in original).


   2.   Relevance of Defendant's Exhibit #27
   Defendant's exhibit #27 reveals that the persons listed directly before and after Morris on the April 22, 1997 billing extract list made premium payments to Chubb on May 9, 1997 and May 5, 1997, respectively. With the knowledge that those policyholders whose names appeared directly before and after Morris on the billing extract made payments shortly after the notices were printed, the trial judge could reasonably conclude that: (1) MAP mailed, and these two policyholders received, the premium-due notices that were printed on April 22, 1997; and (2) MAP mailed Sylvia Morris a premium-due notice because her notice was processed at the same time that MAP mailed a premium-due notice to the other individuals listed before and after her on the billing extract. Furthermore, the fact that such payments were made shortly after Chubb processed and mailed premium-due notices, most certainly, allows a reasonable factfinder to conclude that Chubb mailed all of the premium-due notices processed on April 22, 1997, including the one addressed to Sylvia Morris. This is especially true given the fact that MAP's computer program was designed to print all or none of the premium-due notices. Therefore, we are of the opinion that the district court did not abuse its discretion in allowing Chubb to introduce Defendant's exhibit #27 into evidence./4

B.   The Illinois Premium Notice Statute

   1.   Standard of Review

   The trial judge concluded Chubb had complied with 215 ILCS 5/234 with the presentation of evidence that it had mailed a premium-due notice to Morris in the ordinary course of its business practices. In reaching this conclusion, the judge determined that there was no need for Chubb to offer either a copy of the actual premium-due notice sent to Morris or the testimony of an individual who specifically recalled sending a notice to Morris. Hotaling appeals and claims that evidence of a company's customary practices is insufficient to prove that a premium-due notice was "addressed and mailed" under 215 ILCS 5/234. As this is a question of statutory

interpretation, we review the trial court's interpretation de novo. In re Bonnett, 895 F.2d 1155, 1157 (7th Cir. 1989).


   2.   The Statute
   As recited above, the Illinois Insurance Code requires a life insurance carrier to provide notice of an overdue premium to a policyholder before the company can lawfully cancel a policy. 215 ILCS 5/234. However, under Illinois law, companies are required only to prove that a legally sufficient notice was "addressed and mailed," and not that it was received by the policyholder. Id.; see also Bates v. Merrimack Mutual Fire Ins., Co., 605 N.E.2d 626 (4th Dist. 1992). It is important to note that under Illinois law the insurance carrier bears the burden of proving that the required notice was "addressed and mailed" to the policyholder. Cullen v. North American Co., 531 N.E.2d 390 (2d Dist. 1988).

   Furthermore, the statute details one manner in which an insurance company may meet its burden of demonstrating that it "addressed and mailed" a premium-due notice to a policyholder, stating:

The affidavit of any officer, clerk or agent of the (life insurance) company or of anyone authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given.

215 ILCS 5/234.

   Hotaling maintains that companies are required to use the "affidavit method" described above as the only means of proving they complied with 215 ILCS 5/234. In so arguing, Hotaling relies on Cullen v. North American Co., 531 N.E.2d 390 (2d Dist. 1988). However, the plaintiff-appellant completely disregards the procedural posture of that case. The Illinois appellate court in Cullen was reviewing an entry of summary judgment in favor of an insurance carrier in response to the company's pre-trial motion and not (as is the case here) a judgment entered on the merits after a trial. The Illinois appellate court in Cullen was concerned only with the question of whether the proof of addressing and mailing presented in the insurance company's motion and supporting affidavits was so overwhelming that no issue of material fact remained for a jury to decide at trial. When the Illinois appellate court reversed the district court's entry of summary judgment in Cullen, it did not rule (as Hotaling argues) that, as a matter of law, proof of mailing had to

be achieved with the testimony of a person who actually addressed and mailed the premium-due notice. Rather, the Cullen court clearly limited its decision to the case before it, writing:

The substantive issue to be determined in this case, thus, is whether the prelapse notice was properly sent to the insured. Under the statute, North American had the burden of proving that a written or printed notice had been prepared for the insured, that any such notice stated the amount of premium due and where and to whom it was to be paid, that the notice had been duly addressed and properly mailed to Jacqueline Cullen, and that the notice warned her of the consequences of failure to pay the premium. Each of these items presented a question of fact which had to be resolved before summary judgment could be properly granted.

   While North American presented exhibits and affidavits in support of each fact issue, we conclude that the evidence offered did not sufficiently resolve those issues to permit summary judgment.

* * * *

   In our view North American's evidence, even in the absence of any contrary evidence from plaintiff, does not resolve the fact question of whether or not the insurance company prepared and sent the premium due notice which is required by the statute before defendant can avoid payment of the proceeds of the policy. On the contrary, it is evident that fair-minded persons could draw more than one inference from the pleadings, admissions, affidavits, and exhibits that were presented to the trial court and, accordingly, the issues should have been submitted to a trier of fact for resolution.

Id. at 394. Unlike the plaintiff in Cullen, Hotaling has had his day in court and the trial judge, after weighing the evidence submitted, determined that a timely premium-due notice was sent to the plaintiff-appellant's late wife at her last known address. We are convinced that Cullen does not limit a factfinder's ability to rely on relevant information when determining whether the required notice was addressed and mailed. Consequently, the trial court properly concluded that Chubb complied with 215 ILCS 5/234.

   We are also of the opinion that it makes good business sense to allow companies to prove that they complied with mailing requirements in ways other than with an affidavit from a specific employee. Rather, in today's technologically advanced world such mailings: (1) are routinely

performed by computers; and (2) frequently contain a large volume of notices mailed at a single time. If we were to require testimony from a company's mailing clerk, insurance companies would basically be forced to abandon the use of computers in mass mailings. This would inevitably increase costs which, as we all know, would be passed on to the consumer in the form of higher premiums.

## C. Hotaling's Attack on the Sufficiency of the Evidence

Finally, Hotaling attacks the district judge's findings of fact as "clearly against the [w]eight of the evidence." Hotaling did not, however, file a copy of the trial transcript of the bench trial from which we might determine if indeed the trial court's decision was supported by the weight of the evidence. In failing to file the trial transcript, Hotaling has violated Rule 10(b)(2) of the Federal Rules of Appellate Procedure which states:

If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all the evidence relevant to that finding or conclusion.

We confronted this identical situation in Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 573-74 (7th Cir. 1995), where we stated:

Federal Rule of Appellate Procedure 10(b)(2) requires that a transcript be included in the record on appeal where a party challenges that insufficient evidence supports a verdict. However, [Appellant] did not request that the trial transcript be included in the record on appeal. As a result, we are unable to evaluate the evidence submitted in this case. Such an omission is grounds for forfeiture of a claim.

Accordingly, Hotaling has forfeited this argument on appeal and there is no need to consider this issue any further./5

The decision of the trial court is

AFFIRMED.

/1 215 Ill. Comp. Stat. 5/234 states:

No life [insurance] company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any

portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace, except that in any case in which a parent insures the life of his minor child, the company may send notice of premium due to the parent. Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy. The affidavit of any officer, clerk or agent of the company or of any one authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given.

/2 Wendalyn Chase, an assistant vice-president at Chubb Life in 1997, testified that Chubb Life does not retain copies of premium-due notices sent to policyholders because of the bulk and expense of storing these routine mailings. According to Chase's testimony, in 1997 Chubb Life had approximately 750,000 policyholders including 250,000 universal life policyholders such as Morris.

/3 Chubb did not disclose its intent to use the exhibit in question until one week before trial, which was after the court's discovery deadline contained in its final pretrial order. As a result of Chubb's late designation of the exhibit, Hotaling had only five working days to review the potential impact of the policyholder payment information contained in the exhibit. Hotaling objected that Chubb's late disclosure of exhibit #27 unfairly prejudiced his client because he had "no opportunity to explore the nature of the documents or their significance."

/4 Hotaling also argues that exhibit #27 should not have been received into evidence by the trial

judge because it unfairly surprised him and changed the legal issues being contested at trial. We hold this argument to be without merit because the exhibit did not constitute a shift in tactics or a surprise defense as Hotaling alleges, but merely corroborated Chubb's long-held defense theory--namely, that Chubb mailed Sylvia Morris a premium overdue notice in the routine course of its business procedures and took the initiative to lapse her policy only after she had failed to timely respond to that notice with payment.

/5 Although Hotaling failed to include the necessary transcripts, we obtained a copy of the relevant materials. After reviewing these materials, we are of the opinion that the appellant's arguments are meritless and, therefore, Hotaling would not have prevailed on this argument even if he had complied with FRAP 10(b)(2).