JERRY GRIMSLEY, Plaintiff v. GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant

No. COA11-835

(Filed 20 December 2011)

**1. Trials—summary judgment—no evidence of impermissibly overruling another judge's previous order**

In the absence of an enforceable order denying summary judgment for plaintiff, it could not be concluded that a trial judge's order granting summary judgment for plaintiff impermissibly overruled another superior court judge's previous order.

**2. Insurance—UIM coverage limit—alleged non-receipt of selection/rejection form**

The trial court erred by denying defendant insurance company's motion for summary judgment and by granting summary judgment for plaintiff in an action seeking a declaration that the underinsured coverage limit under plaintiff's policy was $1,000,000 at the time of his injury. Plaintiff's evidence of alleged non-receipt of the selection/rejection form did not contradict defendant's evidence that it mailed the form, and thus, did not raise a genuine issue of fact regarding the mailing sufficient to preclude summary judgment for defendant.

Appeal by Defendant from order entered 28 February 2011 by Judge J. Gregory Bell in Robeson County Superior Court. Heard in the Court of Appeals 14 November 2011.

*Musselwhite, Musselwhite, Branch and Grantham, by J.W. Musselwhite and Stephen C. McIntyre, for Plaintiff.*

*York Williams & Lewis, LLP, by Thomas E. Williams and David R. DiMatteo, for Defendant.*

STEPHENS, Judge.

As a result of an automobile collision between Plaintiff Jerry Grimsley and another driver, Grimsley was injured and incurred "significant damages" that exceeded the limits of the other driver's liability insurance. Grimsley filed an underinsured motorist ("UIM") claim with his automobile insurance provider, Defendant Government Employees Insurance Company ("GEICO"), seeking coverage for the remainder of Grimsley's damages. GEICO denied full coverage of the claim and informed Grimsley that, according to his policy with GEICO, Grimsley's UIM coverage was limited to $100,000. Thereafter, Grimsley filed the present action in Robeson County Superior Court, seeking a declaration that the UIM coverage limit under Grimsley's policy was $1,000,000 at the time of his injury.

After GEICO responded to Grimsley's complaint, both parties moved for summary judgment. The motions were heard by Judge Ola M. Lewis; however, no order disposing of the motions was entered by Judge Lewis. Thereafter, GEICO amended its answer and filed a "Motion for Relief from Order or Ruling and Motion for Summary Judgment." GEICO's motions were heard by Judge J. Gregory Bell, who entered an order denying GEICO's motion for summary judgment and granting summary judgment for Grimsley. GEICO appeals.

[1] As an initial matter, GEICO argues that Judge Bell's order granting summary judgment for Grimsley was improper because that order overruled Judge Lewis' order purportedly denying summary judgment for Grimsley and, thus, violated the rule that one superior court judge may not reconsider and grant a motion for summary judgment previously denied by another superior court judge. *See, e.g., Hastings v. Seegars Fence Co.*, 128 N.C. App. 166, 168, 493 S.E.2d 782, 784 (1997). This argument is unavailing, however, because Judge Lewis' purported order was never entered and was, therefore, ineffective. *West v. Marko*, 130 N.C. App. 751, 755-56, 504 S.E.2d 571, 573-74 (1998) (holding that an order is not enforceable until it is entered). In the absence of an enforceable order denying summary judgment for Grimsley, we cannot conclude that Judge Bell's order granting summary judgment for Grimsley impermissibly overruled another superior court judge's previous order. This argument is overruled.

[2] GEICO next argues that Judge Bell erred by denying GEICO's motion for summary judgment and by granting summary judgment for Grimsley. Specifically, GEICO contends that the evidence before the trial court showed that Grimsley would be unable to prevail on his claim that his UIM coverage limit was $1,000,000 at the time of his injury. Therefore, GEICO urges, Judge Bell should have granted summary judgment for GEICO. For the following reasons, we agree.

In his complaint, Grimsley asserted that he was entitled to $1,000,000 in UIM coverage based on GEICO's alleged violation of N.C. Gen. Stat. § 20-279.21. Although the statute has since been amended, the version of section 20-279.21 applicable in this case required North Carolina automobile liability insurance policies to include UIM coverage "in an amount not to be less than [a baseline set by section 20-279.5] nor greater than one million dollars [] as selected by the policy owner." N.C. Gen. Stat. § 20-279.21(b)(4) (2007). That version of section 20-279.21 further provided that an insured may reject UIM coverage or "select different coverage limits" by completing a "form promulgated by the [North Carolina Rate] Bureau"—a "selection/rejection form"—but if the insured does not reject UIM coverage and does not select different coverage limits, the amount of UIM coverage "shall be equal to the highest limit of bodily injury and property damage liability coverage for any one vehicle in the policy." *Id. In Williams v. Nationwide Mut. Ins. Co.*, 174 N.C. App. 601, 621 S.E.2d 644 (2005), this Court interpreted section 20-279.21 to provide that where the insurer offers the insured neither an *opportunity to reject* UIM coverage, nor an *opportunity to select* a different coverage—denominated by this Court to be a "total failure" by the insurer—the insurer has violated the statute's requirement that the amount of UIM coverage be "selected by the policy owner." *Id.* at 605-06, 621 S.E.2d at 647. The result of such a violation, this Court held, is that the insured is entitled to "the highest available limit of UIM coverage of $1,000,000." *Id.* Relying on our holding in *Williams*, Grimsley asserts that because neither he nor his wife "received or executed a [s]election/[r]ejection form," there was a total failure by GEICO to provide "a meaningful opportunity to select or reject [UIM] coverage" and, thus, Grimsley was entitled to UIM coverage in the amount of $1,000,000.

Since *Williams*, however, this Court has held that regardless of whether an insured "received or executed" a selection/rejection form, the insurer's timely *mailing* of a selection/rejection form to the insured will preclude a finding of a "total failure on the part of [the

insurer] to inform the insured of available coverage that would require adherence to *Williams*." *Nationwide Prop. & Cas. Ins. Co. v. Martinson*, ___ N.C. App. ___, ___, 701 S.E.2d 390, 397-98 (2010) (emphasis omitted). Accordingly, Grimsley cannot prevail on his claim and GEICO is entitled to summary judgment if the evidence before the trial court—including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009)—viewed in the light most favorable to Grimsley, *e.g.*, *In re Kitchin v. Halifax County*, 192 N.C. App. 559, 569, 665 S.E.2d 760, 767 (2008), shows that GEICO *mailed* a selection/rejection form to Grimsley such that there was no total failure by GEICO to notify Grimsley that he may purchase up to $1,000,000 in UIM coverage. *See Martinson*, ___ N.C. App. at ___, 701 S.E.2d at 398-99 (granting summary judgment to insurer where evidence showed no total failure by insurer because insurer mailed selection/rejection form to insured).

In this case, the following evidence was before the trial court: Grimsley's wife testified at her deposition that she received a mailing from GEICO in October 2007, but that the mailing did not include a selection/rejection form. GEICO, however, submitted an affidavit from an "underwriting analyst" who asserted that (1) a selection/rejection form, along with various other policy documents, was printed and mailed to Grimsley's address on 2 October 2007; (2) GEICO's computerized mailing system, "as part of GEICO's regular practice, stored an image of each document" printed and mailed to Grimsley; and (3) although Grimsley did not return the selection/rejection form, "GEICO did receive signed selection/rejection forms back from [other of the 370 new] North Carolina policies that were printed on [2 October 2007] and mailed on that date." GEICO also submitted an affidavit from an "output manager" at the mail center from which Grimsley's policy documents were mailed. The output manager averred that she "[is] familiar with the organizational practices, equipment and procedures that GEICO uses to produce, print, package and send policy documents to its policyholders as part of its regular business activities," and she asserted that (1) the mail center operates "a computer-driven system that uses bar code technology to accurately read, sort and package the pages of documents GEICO mails to policyholders"; (2) if a document is not properly printed or packaged, the system stops processing and alerts operators to the error; (3) "[h]ad there been any error in the production, packaging or mailing of . . . the selection/rejection form, an error message would have alerted GEICO's associates to the problem, and it would have

been addressed"; and (4) based upon her knowledge "of the organizational practices, equipment and procedures" and her review "of the [a]ffidavit of [the underwriting analyst]," she believes "[the] policy documents, including a selection/rejection form . . . were properly printed, inserted and mailed to [Grimsley] . . . on [2 October 2007]." Along with these affidavits, GEICO submitted archived copies—or stored "images"—of the documents mailed to Grimsley, including a copy of the selection/rejection form. GEICO's output manager also testified at her deposition that the archive of documents mailed to Grimsley includes a selection/rejection form.

While GEICO contends that the foregoing evidence conclusively establishes that GEICO mailed a selection/rejection form to Grimsley, Grimsley argues that this evidence was insufficient to warrant summary judgment for GEICO because (1) "there is direct evidence in the record that [Grimsley] did not receive the selection/rejection form"; and (2) there is no "personal testimony by a specific employee that the mailing of the selection/rejection form occurred, that the proper form was in the mailing, and that the envelope containing the form was addressed properly and contained proper postage."

Regarding Grimsley's first argument, the "direct evidence" to which Grimsley refers is Grimsley's wife's assertion that the mailing from GEICO did not include a selection/rejection form. However, Grimsley's evidence only addresses his receipt of the selection/rejection form, and does not address whether the form was actually sent. *See Martinson*, ___ N.C. App. at ___, 701 S.E.2d at 397-98 (insured's claim that she did not *receive* selection/rejection form does not serve as evidence contradicting insurance company's assertion that it *mailed* the form where insurance company's assertion is supported by testimony from employees and electronic documentation). Accordingly, Grimsley's evidence of alleged non-receipt of the selection/rejection form does not contradict GEICO's evidence that it mailed the form and, thus, does not raise a genuine issue of fact regarding the mailing sufficient to preclude summary judgment for GEICO.

As for Grimsley's second argument—that summary judgment would be improper because GEICO did not offer any "personal testimony" by an employee who mailed the Grimsley's selection/rejection form—Grimsley cites this Court's decisions in *Martinson, supra,* and *Hart v. Perez*, No. COA09-1157, 2011 N.C. App. LEXIS 216 (Feb. 15, 2011) (unpublished), for the proposition that, absent "personal testimony" by the employee who physically mailed the selection/rejection

form, an insurer cannot conclusively establish that the selection/rejection form was mailed to the insured. While Grimsley is correct that in both *Martinson* and *Perez* an employee of the insurer testified that he or she properly mailed the selection/rejection form, neither decision can be read to hold that such "personal testimony" is the *only* way to establish the mailing of a selection/rejection form.

Moreover, in our view, such a holding would be impractical because it ignores the necessity and ubiquity of mass mailings conducted by large insurance companies, who are required by law to regularly mail documents to their many customers and who, by virtue of their size, are able to take advantage of economies of scale and provide services to potential insureds—like the Grimsleys—who are seeking more insurance coverage at lower cost. Were we to require "personal testimony" to establish the mailing of a selection/rejection form, larger insurance companies would be required to abandon use of computerized mailing systems and hire workers to personally perform each step in the mailing process, which changes would result in an obvious decrease in efficiency, an arguable decrease in reliability, and a certain increase in the cost of insurance coverage. *Cf. Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 581 (7th Cir. 2001) ("[I]n today's technologically advanced world [mass] mailings: (1) are routinely performed by computers; and (2) frequently contain a large volume of notices mailed at a single time. If we were to require testimony from a company's mailing clerk, insurance companies would basically be forced to abandon the use of computers in mass mailings. This would inevitably increase costs which, as we all know, would be passed on to the consumer in the form of higher premiums.").

Further, assuming a GEICO employee had physically mailed the selection/rejection form to Grimsley and would be available to testify on the matter, because GEICO mailed nearly 400 sets of policy documents along with Grimsley's documents, it is certain that the employee would not remember specifically mailing Grimsley's documents and that that employee's "personal testimony" would amount to little more than a statement of the general practice at the mailing facility. Because similar evidence of GEICO's general mailing practices is before this Court, even in the absence of such "personal testimony," we see no reason to impose an excessive burden on insurance companies by adopting Grimsley's rule that "personal testimony" by the employee who physically mailed the selection/rejection form is necessary to establish that the insurer mailed the form to the insured. Rather, we hold that evidence of general practices at a computerized

mailing facility, so long as such evidence is sufficiently reliable, can be used to establish proper mailing of a selection/rejection form.[1]

In our view, GEICO's evidence in this case, viewed in the light most favorable to Grimsley, is sufficient to establish that GEICO properly mailed a selection/rejection form to Grimsley. Initially, we note that because Grimsley's wife testified that she received a mailing from GEICO shortly after the date GEICO asserts it mailed the set of documents that included the selection/rejection form, there is no issue of fact as to whether GEICO mailed a properly addressed set of policy documents. As such, the only issue is whether that set of documents included a selection/rejection form.

As evidenced by the affidavits submitted by GEICO, GEICO's computerized mailing system employed a number of safeguards to ensure accurate mailings: document archival, print scanners to assess printing quality, barcode sequencing to make certain all necessary documents are printed and sorted properly, scales to make sure that all mailings are the appropriate weight, process-stopping procedures and alerts to operators if errors are detected, and a log to track the occurrence of errors. In our view, GEICO has clearly established the reliability of its computerized mailing system. Further, Grimsley has offered no evidence—beyond his impertinent invitation to this Court to take judicial notice of the fallibility of any "computer system developed by humankind"—to dispute the accuracy and reliability of GEICO's computerized mailing practice. Accordingly, we conclude that GEICO's evidence of the general practice at its computerized mailing facility, along with the copies of the documents mailed to Grimsley and the affidavits asserting that the selection/rejection form was included, is sufficient to establish that GEICO mailed a selection/rejection form to Grimsley. Therefore, we conclude that Grimsley was not entitled to $1,000,000 in UIM coverage pursuant to *Williams* because there was not a total failure on the part of GEICO to inform Grimsley of available coverage options. *See Martinson*, ___ N.C. App. at ___, 701 S.E.2d at 398-99.

---

1. This holding comports with the decisions of courts in various other jurisdictions. *See, e.g., Hotaling*, 241 F.3d at 576, 579-81 (approving trial court's determinations that (1) insurer could prove it mailed notice to insured by introducing general-practice evidence regarding insurer's "almost fully automated system of mailing premium notices and other correspondence to the holders of its [policies]"; and (2) "there was no need for [insurer] to offer either a copy of the actual [] notice sent to [insured] or the testimony of an individual who specifically recalled sending a notice to [insured]"); *Federal Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1040 (10th Cir. 1994) ("Proof of customary and usual computer procedures is sufficient to show adherence to usual and customary procedures of proper mailing."); *Russell v. Nationwide*

**GRIMSLEY v. GOV'T EMPS. INS. CO.**

[217 N.C. App. 530 (2011)]

Nevertheless, Grimsley argues that he was entitled to $1,000,000 in UIM coverage at the time of his injury because of a GEICO agent's "affirmative misrepresentation" to Grimsley's wife that Grimsley "did not have the freedom to select UIM coverage different than bodily injury limits." Grimsley contends that this conduct by GEICO negates any "opportunity to select or reject" UIM coverage GEICO may have provided and "constitutes behavior by an insurer more culpable than that of merely failing to provide an insured with an opportunity to select or reject UIM coverage" such that, "pursuant to this Court's precedent, [Grimsley] was properly granted [$1,000,000] in UIM coverage." We are unpersuaded.

Assuming *arguendo* that a GEICO agent misrepresented to Grimsley's wife the availability of coverage in an amount other than that initially purchased, we cannot conclude that such a misrepresentation would entitle Grimsley to $1,000,000 in UIM coverage.

Although in *Williams* this Court held that an insured not provided *the opportunity* to reject UIM coverage or select different UIM coverage limits is entitled to $1,000,000 in UIM coverage, 174 N.C. App. at 605-06, 621 S.E.2d at 647, that holding was supplemented by our decision in *Martinson*, in which we held that the insurer's *act of mailing* the selection form satisfied the requirement that the insured be given an opportunity to select or reject UIM coverage up to $1,000,000, *regardless of whether the insured received the form. Martinson*, ___ N.C. App. at ___, 701 S.E.2d at 397-98. The obvious implication from our decision in *Martinson* is that the determination of whether an "opportunity to select or reject" is given to the insured depends on whether the insurer mailed a selection/rejection form and is unaffected by the insured's receipt of the form. Logically, then, because the fact that an insured never received, and thus, never read the selection/rejection form is irrelevant to the question of whether the insured had an "opportunity to select or reject," so too is the fact that an insured would not have comprehended the meaning of the form—*i.e.*, not have understood the form to indicate the insured's "freedom to select UIM coverage different than bodily injury limits." Thus, the effect of the selection/rejection form on the insured upon receipt has no bearing on whether the insured was provided an "opportunity to select or reject." It is on this point that Grimsley's argument fails.

---

*Life Ins. Co., No.* 09-1788, 2010 U.S. App. LEXIS 23449, at *17 (4th Cir. Nov. 12, 2010) (unpublished) ("[W]e find that computerized evidence can, as a matter of law, establish proof of proper mailing if it is sufficiently reliable.").

Grimsley's theory is that even if GEICO mailed a selection/rejection form to him after the alleged misrepresentation, because he relied on the GEICO agent's representation and believed that $1,000,000 in UIM coverage was not available, Grimsley never had a "meaningful opportunity" to reject UIM coverage or to select $1,000,000 in UIM coverage. According to Grimsley, upon receiving a selection/rejection letter allegedly contradicting the GEICO agent's representation,

> [t]he rational purchaser [Grimsley] would, in the least, be misled as to UIM coverage, and in the most would not believe that a form allegedly included [] in a stack of pre-printed materials [] would outweigh and somehow overrule explicit representations which were made to the purchaser during a personal conversation between the purchaser and the insurance agent.

The crux of Grimsley's argument is that the determination of whether Grimsley was provided an opportunity to reject UIM coverage or select different UIM coverage should be based on the effect of the selection/rejection form on Grimsley upon receipt, rather than on the actual mailing of the form. However, as discussed *supra*, the effect of the selection/rejection form on Grimsley, or his comprehension of the form, has no bearing on the question of whether he was given an opportunity to reject UIM coverage or to select up to $1,000,000 in UIM coverage. As we held in *Martinson*, the mailing of the selection/rejection form is sufficient to satisfy the section 20-279.21 requirement that the insurer provide the insured an opportunity to reject UIM coverage or to select different UIM coverage limits. This is so regardless of what a GEICO agent allegedly told Grimsley's wife about UIM coverage limits and regardless of Grimsley's hypothesized understanding of the form.

Because Grimsley was given an opportunity to reject UIM coverage or to select different coverage limits, and, thus, there was no total failure on the part of GEICO to inform Grimsley of available coverage, we conclude that Grimsley was not entitled to $1,000,000 in UIM coverage at the time of his injury. Consequently, we reverse the trial court's order granting summary judgment for Grimsley and remand to the trial court for entry of summary judgment for GEICO.

REVERSED and REMANDED.

Chief Judge MARTIN and Judge ELMORE concur.