NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 27, 2010
Decided April 21, 2011

*Before*

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1946

| | |
|---|---|
| MORAD ELUSTA, *et al.*,<br>    *Plaintiffs-Appellees*,<br><br>    *v.*<br><br>ROBERT RUBIO, *et al.*,<br>    *Defendants-Appellants*. | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 06 C 4264<br><br>David H. Coar,<br>*Judge*. |

**O R D E R**

A jury found defendant Robert Rubio liable to plaintiff Morad Elusta for intentional infliction of emotional distress ("IIED"), a state-law claim that Elusta had appended to a suit he brought under 42 U.S.C. § 1983. Rubio now appeals on three grounds: first, that the district court erred by denying his motion for summary judgment and, because he was entitled to judgment as a matter of law, the case should have never proceeded to trial; second, that there was insufficient evidence to find him liable of IIED under Illinois law; and finally, that the jury's verdict was so internally inconsistent that he deserves a new trial.

Because we the first argument has now been expressly rejected by the Supreme Court, in *Ortiz v. Jordan,* 131 S.Ct. 884 (2011), and Rubio has forfeited the latter two, we affirm.

Elusta and Rubio were next-door neighbors, but they did not get along well. In August 2005, Elusta was arrested after Rubio, a former Chicago police officer, called the Chicago Police Department asserting that Elusta had assaulted him. Officers Brian Josephs and Raymond McCann responded to Rubio's call; once on the scene, they placed Elusta under arrest and put him in the back of their patrol car. Shortly thereafter, Sergeant Timothy Flisk arrived; apparently he had intended to witness the arrest, but he was too late. Flisk directed Josephs and McCann to follow him back to the station. Once at the station, however, Flisk took the front entrance while the two officers drove Elusta to the back alley. In the alley, the officers beat Elusta so badly that an ambulance was called, and Elusta spent five days in the hospital. Rubio's assault charges were never pursued.

A year later, in August 2006, Elusta filed a civil rights action pursuant to 42 U.S.C. § 1983 against Josephs and McCann in the U.S. District Court for the Northern District of Illinois. Elusta's original complaint alleged that the officers violated his Fourth Amendment rights on two grounds—false arrest and excessive use of force. Fifteen days later, Rubio allegedly threatened to have Elusta's house ransacked and drugs planted inside if he did not drop the lawsuit. That same day, different Chicago police officers searched Elusta's house pursuant to a warrant. The basis for the warrant remains unclear. Elusta says that these officers actually did ransack his home, that they stole his family's property, and that they intimidated his children. On the basis of his daughter's observations, Elusta further asserts that Rubio was in the house as the officers performed their "search." In the aftermath of this episode, Elusta amended his complaint by adding Rubio as a defendant on both of the Fourth Amendment counts and, invoking the district court's supplemental jurisdiction, by alleging an IIED claim under Illinois law against Rubio alone.

Rubio moved for summary judgment, but the district court denied the motion. The case then went to the jury, and both parties moved for judgment as a matter of law, see FED. R. CIV. P. 50(a); the district court denied both motions and allowed the case to go to the jury. After deliberating briefly, the jury rejected Elusta's false arrest claim for all defendants. With respect to the excessive force count, the jury found Officers Josephs and McCann liable for $20,000 in damages, but it absolved Rubio. On the IIED claim, in contrast, the jury found Rubio liable and set damages at $20,000. Rubio then renewed his motion for judgment as a matter of law, see Rule 50(b), but the district court denied that motion as well. Rubio now appeals.

In this court, Rubio essentially argues that the Illinois tort of IIED can never be based on a mere complaint to a police officer. Since, stripped to its essentials, that is all that Elusta alleged, he argues that the district court erred when it denied his summary judgment

motion. As Rubio sees it, all he did was complain to the Chicago Police Department, whose state actors are the ones who are responsible for Elusta's injuries. Rubio also presents roughly the same argument in the guise of an attack on the sufficiency of the evidence supporting the jury's finding of liability, and he finally contends that the jury's verdicts are irreconcilably inconsistent.

Rubio's first argument asks us to reach back and decide whether the district court erred when it denied his summary judgment motion. We see no way that we can do that in light of the Supreme Court's decision in *Ortiz.* Granted, *Ortiz* was a case in which the defendant had sought summary judgment based on a qualified immunity defense. The district court found that disputed issues of fact prevented it from resolving that issue at the summary judgment stage and allowed the case to go to trial. At the conclusion of the trial, the jury ruled for the plaintiff, but on appeal, the court ruled that both defendants were entitled to qualified immunity. The Supreme Court then granted certiorari to resolve what it described as "a threshold question on which the Circuits are split: May a party, as the Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits?" 131 S.Ct. at 888-89. It left no doubt about its ruling: "Our answer is no." *Id.* at 889. Once there has been a trial, the qualified immunity defense had to be "evaluated in light of the character and quality of the evidence received in court." *Id.*

Applying that rule to our case, we conclude that the only question that properly could be before us is whether, in light of the evidence presented at trial, the district court erred by denying Rubio's motions under Rule 50. But Rubio has not asked us to undertake such a review. In fact, his brief emphasizes that he is asking us only to review the question whether the evidence submitted *"before* trial" was sufficient to withstand summary judgment. But that is plainly the wrong perspective after *Ortiz.* Without any discussion of the Rule 50 motions in light of the trial evidence, we have nothing that would suggest that the district court erred in its decision to deny them.

*Ortiz* also sheds light on why we deem Rubio's second argument—that there was insufficient evidence to find him liable for IIED under Illinois law—forfeited. As *Ortiz* explained, our review of a jury verdict must focus on the "full record developed in court." 131 S.Ct. at 889. This structural limitation to our review is reflected in Federal Rule of Appellate Procedure 10(b). Rule 10(b)(1) makes clear that it is the appellant's (here, Rubio's) "duty to order" transcripts on appeal, and Rule 10(b)(2) provides that an appellant who "intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence . . . must include in the record a transcript of all evidence relevant to that finding or conclusion." FED. R. APP. P. 10(b). Before oral argument, observing that Rubio had failed to provide the trial transcripts for our appellate review, Elusta moved to dismiss the appeal. We ordered Rubio to file a response "indicating whether the trial transcripts have been ordered, and if not, whether he will be ordering them." Our order

included a stern warning: "Because Rubio has raised issues for which the court will need to review the transcripts, he will suffer the cost of their absence." Rubio inexplicably failed to heed this warning. With nothing before us that would permit an assessment of his attack on the sufficiency of the evidence used to hold him liable under Illinois law for IIED, we have no choice but to regard it as forfeited. *Cf. RK Co. v. See*, 622 F.3d 846, 852-53 (7th Cir. 2010) (dismissing claim); *Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 581 (7th Cir. 2001) (omission of transcripts results in forfeiture of "argument on appeal and there is no need to consider th[e] issue any further"); *LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir. 1995) (noting that "dismissal is the appropriate course if the absence of a complete record precludes meaningful appellate review.").

Rubio's final argument—that the jury's verdicts finding him liable on the IIED count, but not liable for the Fourth Amendment counts—were internally inconsistent is also doomed by his failure to comply with Rule 10. A "new trial based on inconsistent verdicts is warranted only when a jury's verdict cannot be reconciled with the evidence at trial," and any "plausible explanation for the verdict precludes reversal." *Fox v. Hayes*, 600 F.3d 819, 844 (7th Cir. 2010); see also *Pearson v. Welborn*, 471 F.3d 732, 739 (7th Cir. 2006) (requiring the challenger of a jury verdict to "demonstrate[] that the jury's verdict is irreconcilable with the evidence presented at trial"). Here, we do not have before us the evidence presented at trial, and, therefore, we have no way of knowing whether reconciliation is possible or not. This argument, too, has been forfeited.

Accordingly, we AFFIRM the judgment of the district court.